**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

MANUEL BETANCOURTH ESPINAL,

      Petitioner,

v.                                                                 Civ. No. 26-76 JB/GJF

MARY DE ANDA YBARRA, Field Office
Director of Enforcement and Removal
Operations, EL PASO Field Office,
Immigration and Customs Enforcement;
KRISTI NOEM, Secretary, U.S. Department of
Homeland Security; U.S. DEPARTMENT OF
HOMELAND SECURITY; PAMELA BONDI,
U.S. Attorney General; EXECUTIVE OFFICE
FOR IMMIGRATION REVIEW; TORRANCE
COUNTY DETENTION FACILITY, George
Dedos of TORRANCE COUNTY
DETENTION FACILITY,

      Respondents.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON PETITION FOR A WRIT OF HABEAS (DKT. NO. 1) AND RESPONDENTS' MOTION TO DISMISS PETITION (DKT. NO. 8)[1]

THIS MATTER is before the Court on the *Petition for a Writ of Habeas Corpus* (Dkt. No.

1) ("Petition") filed by Manuel Betancourth Espinal ("Petitioner" or "Mr. Betancourth Espinal")

and *Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus* (Dkt. No. 8) ("Motion to

Dismiss"), filed by Mary De Anda-Ybarra, Kristi Noem, U.S. Department of Homeland Security

("DHS"), Pamela Bondi, and the Executive Office for Immigration Review ("EOIR") (collectively,

the "Federal Respondents"). Respondents Torrance County Detention Facility ("Torrance") and

George Dedos, Warden of the Torrance County Detention Facility where Petitioner is being held,

are not represented and have not responded. The Federal Respondents assert that their arguments

---

[1] The undersigned files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's Order of Reference (Dkt. No. 4).

apply with equal force to Warden Dedos, as he is detaining Petitioner at the request of the United States.[2] Mot. 1 n.1, Dkt. No. 8. Petitioner thereafter replied. Reply, Dkt. No. 11. The undersigned held an evidentiary hearing by Zoom video on the Petition and the Motion to Dismiss on March 26, 2026. Clerk's Minutes, Dkt. No. 14.

Having considered the briefing, the evidence, the law, and counsels' oral arguments, the Court recommends that the Petition be granted as to Counts I and II for violation of the Immigration and Nationality Act ("INA") and procedural due process. Because the Court also recommends ordering an individualized bond hearing to be held within seven days, the Court recommends denying the substantive due process claim in Count III without prejudice as unripe. Consequently, and for the same reasons, the Court recommends denying the Motion to Dismiss as to Counts I and II but granting it as to Count III without prejudice and on different grounds than those argued by Respondents. Finally, the Court recommends granting Petitioner's requested relief only in part as described herein.

## I.    INTRODUCTION

This case is one of hundreds of § 2241 habeas cases brought in this District and one of thousands brought in districts across the nation stemming from a new interpretation of the INA, 8 U.S.C. § 1225(b)(2)(A), by DHS. From 1997 to 2025, through five successive presidential administrations, when United States Immigration and Customs Enforcement ("ICE") detained noncitizens[3] within the interior of the United States who did not have a pending order of removal, it did so under 8 U.S.C. § 1226. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 500 (5th Cir. 2026).

---

[2] Given this representation that the arguments of respondents align, the Court will refer to them collectively as "Respondents" throughout this PFRD.

[3] The INA defines an "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). This PFRD uses "alien" and "noncitizen" interchangeably.

On July 8, 2025, however, DHS issued new interim guidance that all noncitizens who enter the country without being admitted or who arrive without proper documentation are subject to *mandatory* detention, regardless of their length of residency in the country, unless they are paroled under INA § 212(d)(5). *See id.*

The Board of Immigration Appeals ("BIA") considered this new policy interpretation in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA Sept. 5, 2025). The BIA held that the plain language of 8 U.S.C. § 1225(b)(2)(A) deprived immigration judges of authority to hear bond requests or to grant bonds to aliens who are present in the United States without admission. *Id.* at 225. Yajure Hurtado had crossed into the United States without inspection in 2022, lived in the United States for years, was granted temporary protected status in 2024 by the United States Citizenship and Immigration Services ("USCIS"), but was arrested after that status expired. *Id.* at 216-17. The BIA concluded, "Aliens, like respondent, who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer." *Id.* at 228. "Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission.'" *Id.*

The BIA considered significant the history and passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which substituted the term "admission" for "entry" and replaced deportation and exclusion proceedings with removal proceedings. *Id.* at 222-23. As the BIA explained, Congress enacted the IIRIRA to remedy the unintended consequence of having created a statutory scheme where aliens who enter without inspection could take advantage of greater procedural and substantive rights afforded in deportation proceedings, while aliens who presented themselves at the border were limited to more summary exclusion proceedings. *Id.* at 223 (quoting *Martinez v. Attorney General of U.S.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012)).

Consequently, according to the BIA, aliens who enter without inspection or admission are "applicants for admission," *id.* at 224, regardless how long they have lived here, until an immigration officer determines that they are "clearly and beyond a doubt entitled to be admitted," *id.* at 228 (quoting 8 U.S.C. § 1225(b)(2)(A)). In the wake of *Yajure Hurtado*, immigration judges have uniformly concluded that they lack jurisdiction to hold bond hearings for detainees held under § 1225(b)(2)(A).[4]

Here, Respondents contend that Petitioner is properly detained under § 1225(b)(2)(A) because, as an alien present in the United States without being admitted, he remains an applicant for admission, and his due process rights are limited to the statutory rights in § 1225(b)(2)(A). But Petitioner urges the Court to follow the vast majority of district courts and find that he may be detained only under § 1226, which entitles him to a bond hearing. For the following reasons, the Court recommends concluding that § 1225(b)(2)(A) does not apply to Petitioner, and that Respondents violated the INA and the Due Process Clause when subjecting him to mandatory detention for months without a bond hearing.

## II.    FACTUAL BACKGROUND

Manuel Betancourth Espinal is a citizen of Nicaragua. Petition ¶ 2, Dkt. No. 1. He entered the United States on or about December 30, 2021, near Eagle Pass, Texas, when he was about 29 years old. *Id.* ¶¶ 2, 43; Notice to Appear, Gov.'s Ex. 2, Dkt. No. 8-2; Form I-213, Gov.'s Ex. 1 at 2, Dkt. No. 8-1. On or about the same day, DHS placed him in removal proceedings pursuant to 8 U.S.C. § 1229a and released him on his own recognizance. Petition ¶¶ 2, 44, Dkt. No. 1. Since

---

[4] *Yajure Hurtado* is called a "precedential" opinion, which in this context means a decision identified by the BIA as binding authority on U.S. immigration courts. The Supreme Court recently directed district courts to "exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024). Courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 413. Consequently, while binding on immigration courts, *Yajure Hurtado* is not binding on this Court.

then, Petitioner has resided continuously in the United States and has met all obligations DHS imposed on him regarding the conditions of his release. *Id.* ¶ 4.

On or around February 25, 2022, Petitioner reported to the local Enforcement and Removal Office ("ERO") in Denver, Colorado, where he was served with a Notice to Appear. *Id.* ¶ 2; Notice to Appear, Gov.'s Ex. 2, Dkt. No. 8-2. The Notice to Appear charged him as "an alien present in the United States who has not been admitted or paroled" under § 212(a)(6)(A)(i) of the INA. Notice to Appear 1, Dkt No. 8-2.

On December 22, 2022, Petitioner filed an application for Asylum, Withholding of Removal and Convention against Torture. *Compare* Petition ¶ 3, Dkt. No. 1, *with* Resp. 2, Dkt. No. 8. His counsel filed a motion to change venue, which was granted, and after which, the immigration court issued a hearing notice for September 6, 2029. *See* Petition ¶ 3, Dkt. No. 1; Notice, Dkt. No. 1-3.

On November 19, 2025, Petitioner reported as required to the Birmingham, Alabama, ERO Office. Petition ¶ 4, Dkt. No. 1. When he notified the immigration officer that he recently moved to Illinois, the officer told him to report within 10 days to the local ERO office in Illinois. *Id.* When Petitioner complied by reporting to the Chicago ERO office on November 21, 2025, he was detained pursuant to a Warrant for Arrest, Form I-200, despite a lack of criminal history. *Id.* ¶¶ 4-5; Gov.'s Ex. 1 at 2, Dkt. No. 8-1; Gov.'s Ex. 3, Dkt. No. 8-3. He has not been given an opportunity to post bond, and he has not requested a bond hearing. *See* Petition ¶ 45, Dkt. No. 1, Mot. 2, Dkt. No. 8.[5] Petitioner has a merits hearing in his immigration case set for April 22, 2026. *See* Clerk's Minutes 2, Dkt. No. 14. He is being held at the Torrance County Detention Facility. Petition ¶ 6, Dkt. No. 1.

_____

[5] *See also* Mar. 26, 2026 Zoom Hr'g Audio Recording (counsel for Petitioner stated that she had not filed motion or request for custody redetermination in Petitioner's immigration case based on futility after *Yajure Hurtado*).

## III.    PROCEDURAL HISTORY OF THIS CASE

On January 19, 2026, Mr. Betancourth Espinal filed a *Petition for Writ of Habeas Corpus* (Dkt. No. 1) under 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651. Petition ¶ 13, Dkt. No. 1. Petitioner asserts that he seeks to enforce his rights as a member of the nationwide class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, __ F.Supp.3d __, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025) (order granting partial summary judgment); *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, __ F.Supp.3d __, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) (order certifying proposed nationwide Bond Eligible Class). Petition ¶¶ 6-7, Dkt. No. 1. The Petition contains three Counts: violation of the INA (Count I); violation of procedural due process (Count II); and violation of substantive due process (Count III). *Id.* ¶¶ 47-70. For remedies, Petitioner requests that the Court: (i) assume jurisdiction; (ii) enjoin his transfer outside the district while this case is pending; (iii) issue an order to show cause why the Petition should not be immediately granted; (iv) issue a writ requiring his immediate release or provide a bond hearing within seven days; and (v) declare his detention unlawful. *Id.* at 21-22, ¶¶ a-e.

This Court entered an *Order Directing Service and for Respondents to Show Cause* directing Respondents to respond to the Petition within 14 days and show cause why the requested relief should not be granted. Order 2-3, Dkt. No. 6. The Court found good cause to allow Respondents more than three days to respond. *Id.* at 3 n.1. Respondents thereafter filed a *Motion to Dismiss Petition for Writ of Habeas Corpus* (Dkt. No. 8). Given the Court's *Order Directing Service and for Respondents to Show Cause* (Dkt. No. 6) and Respondents' filing of a motion to dismiss, Petitioner's request for an order to show cause is now moot, and it should be denied.

6

In the motion to dismiss, Respondents raise three main arguments: (1) lack of jurisdiction; (2) failure to exhaust; and (3) they have not violated the INA or Due Process Clause. *See* Mot. 1, Dkt. No. 8. They further contend that Petitioner's detention is not so unduly prolonged to implicate substantive due process and that *Maldonado Bautista* does not have preclusive effect in this case. Petitioner filed a reply largely reiterating his prior arguments in support of his Petition, as well as contending the Court has jurisdiction to issue relief. Reply, Dkt. No. 11.

## IV.    LEGAL OVERVIEW

An immigration judge conducts proceedings to decide the inadmissibility or deportability of an alien. 8 U.S.C. § 1229a(1)(1). Aliens placed in removal proceedings may be charged with an applicable ground of inadmissibility under § 1182(a) or of deportability under § 1227(a). Inadmissible aliens are "ineligible to be admitted to the United States." 8 U.S.C. § 1182(a). "[A]ny immigrant at the time of application for admission" who does not possess "a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title" is "inadmissible." *Id.* § 1182(a)(7)(A)(i)(I).

Proceedings under § 1229a, unless otherwise specified, "shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." *Id.* § 1229a(a)(3). In removal proceedings, written notice called a "notice to appear" must be given to the alien either personally or served through the mail. *Id.* § 1229(a)(1). The notice to appear includes, among other things, the nature of the proceedings and legal authority for them, the alleged violation of law, and the charges. *Id.*

The statutory provisions at issue in this case are those governing mandatory detention in 8 U.S.C. § 1225, and the "Apprehension and detention of aliens" in 8 U.S.C. § 1226. After discussing these INA provisions and implementing regulations in more detail, the Court will turn to an overview of due process law in the immigration context before analyzing how the law applies to Petitioner's detention.

### A.  Overview of Sections 1225 and 1226

"Congress has authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings" to give "immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). Sections 1225 and 1226 govern the detention of noncitizens prior to a final order of removal. *See id.* at 287-89. "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)" and "to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289.

Generally, a non-citizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). The implementing regulations define an "arriving alien" as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry , or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-

entry, and regardless of the means of transport." 8 C.F.R. § 1001.1(q). "An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." *Id.* [6]An alien who is caught trying to enter at a place other than a port of entry is treated as an arriving alien. *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 108 (2020) (citing 8 U.S.C. §§ 1225(a)(1), (3)). All aliens "who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3) (emphasis added). "Admission" or "admitted" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Section 1225(a) also provides for the "Withdrawal of application for admission": "An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). "An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant *in seeking admission to the United States*, including the applicant's intended length of stay and whether the applicant intends to remain permanently or become a United States citizen, and whether the applicant is inadmissible." *Id.* § 1225(a)(5) (emphasis added).

Section 1225(b)(1) sets forth the procedures for the "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." 8 U.S.C. §

---

[6] The Secretary of Homeland Security may "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Granting such parole, however, "shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* The parties confirmed at the evidentiary hearing that Mr. Betancourth Espinal was not granted humanitarian parole under § 1182(d)(5)(A).

1225(b)(1). An immigration officer may order expedited removal of an arriving alien without further hearing or review if the officer determines that the alien is inadmissible under § 1182(a)(6)(C) or 1182(a)(7), provisions governing inadmissibility due to fraud, misrepresentation, or lack of valid documentation. 8 U.S.C. § 1225(b)(1)(A)(i); *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(1)(A)(i) (in turn citing §§ 1182(a)(6)(C), (a)(7))). Aliens also subject to expedited removal are those designated by the Attorney General in her discretion. *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(iii)).

"Applicants can avoid expedited removal by claiming asylum." *Thuraissigiam*, 591 U.S. at 109. "If an applicant 'indicates either an intention to apply for asylum' or 'a fear of persecution,' the immigration officer 'shall refer the alien for an interview by an asylum officer.'" *Id.* (quoting §§ 1225(b)(1)(A)(i)-(ii)). "If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive 'full consideration' of his asylum claim in a standard removal hearing." *Id.* at 110 (citing 8 C.F.R. § 208.30(f)) (internal footnote omitted). Applicants who raise an asylum claim are nevertheless "detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." *Id.* at 111 (quoting § 1225(b)(1)(B)(iii)(IV)). If an alien is found to have a credible fear, he may be detained pending further consideration of the asylum application. *Id. See also* 8 U.S.C. § 1225(b)(1)(B)(ii) ("If the [asylum] officer determines at the time of the interview that an alien has a credible fear of persecution …, the alien shall be detained for further consideration of the application for asylum.").

Section 1225(b)(2) governs "Inspection of other aliens." 8 U.S.C. § 1225(b)(2). "Section 1225(b)(2) is broader" than § 1225(b)(1) and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Jennings*, 583 U.S. at 287. Under § 1225(b)(2), "in the case of an alien who is an applicant for

admission, if the examining immigration officer determines that an alien **seeking admission** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding…." 8 U.S.C. § 1225(b)(2)(A) (bold added); *Jennings*, 583 U.S. at 288. Detention under § 1225(b) is mandatory until immigration officers decide either the application for asylum or until removal proceedings conclude. *Jennings*, 583 U.S. at 299-300.

Except for temporary parole under 8 U.S.C. § 1182(d)(5)(A) for urgent humanitarian reasons or significant public benefit, "there are no *other* circumstances under which aliens detained under § 1225(b) may be released." *Id.* at 300. Under § 1182(d)(5)(A), arriving "aliens who claim asylum and establish a credible fear with an asylum pre-screening officer can be paroled at the point of entry while they pursue their asylum application." *Succar v. Ashcroft*, 394 F.3d 8, 15 (1st Cir. 2005).

Section 1226(a) establishes the process of arresting and detaining noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. As the Supreme Court explained, "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Id.* Section 1226(a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). As a matter of federal regulation, noncitizens detained under § 1226(a) generally "receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

According to the federal regulations pertaining to "Apprehension, custody, and detention," at the time of issuance of the notice to appear, or anytime afterwards and until removal proceedings are concluded, the noncitizen "may be arrested and taken into custody under the authority of Form

11

I–200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1). The regulations designate which immigration officers may issue an arrest warrant and which may serve it. *Id.*

Section 236.1(d)(1) provides:

> After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, … the immigration judge is authorized to exercise the authority in section 236 of the Act … to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released….

8 C.F.R. § 236.1(d)(1).

The Attorney General "may release the alien" on bond or conditional parole, unless the alien has committed certain criminal offenses or terrorist activities listed in § 1226(c), in which case detention is mandatory. *See* 8 U.S.C. § 1226(a)(2)(A)–(B), (c); *Jennings*, 583 U.S. at 288-89, 303. "The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). In 2025, Congress passed the Laken Riley Act, which added additional criminal convictions triggering § 1226(c)'s custodial provisions. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025) (codified as amended at § 1226(c)(1)(E)).[7] The Amendment mandated custody for aliens inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) who are charged, arrested, or convicted of burglary, theft, larceny, shoplifting, assault of a law enforcement officer, or any crime resulting in death or serious bodily injury to another person. 8 U.S.C. § 1226(E)(i)-(ii).

### B. Overview of Due Process in the Immigration Context

The Fifth Amendment's Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend.

---

[7] Section 1226(c) does not apply here because it is undisputed Petitioner has no criminal history.

V. The core concept of due process is protection of the individual against arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). Due process comes in two varieties. Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the idea of ordered liberty. *Id.* at 847. Procedural due process, by contrast, requires notice and an opportunity to be heard appropriate to the nature of the case before depriving an individual of a life, liberty, or property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Immigration proceedings are civil in nature, and as such, the Government's interests are non-punitive, such as ensuring the appearance of an alien at future immigration proceedings and protecting the community from danger. *Id.*

The Constitution gives the political branches "plenary authority to decide which aliens to admit" and the "power to set the procedures to be followed in determining whether an alien should be admitted." *Thuraissigiam*, 591 U.S. at 139. An alien seeking initial entry to the United States is only entitled to the process authorized by Congress. *Id.* at 138-39. "While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107 (holding that alien detained near border shortly after unlawful entry did not "effect an entry" and only has those rights regarding admission that Congress provided by statute). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including

aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

## V.    ANALYSIS

### A. The Court should not dismiss the Petition for lack of jurisdiction.

A court is authorized to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)). Respondents nonetheless assert that three provisions bar district court review of Petitioner's claims in this habeas case: 8 U.S.C. § 1252(e)(3), 8 U.S.C. § 1252(g), and 8 U.S.C. § 1252(b)(9). Petitioner disagrees, as does this Court.

"[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Demore v. Kim*, 538 U.S. 510, 517 (2003) (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). And Congress must be "particularly clear" that it intends for a provision to bar habeas review. *Id.*

According to Respondents, § 1252(e)(3) limits judicial review of determinations under § 1225(b) to the District Court for the District of Columbia:

> Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—
>
> (i)    whether such section, or any regulation issued to implement such section, is constitutional; or
>
> (ii)    whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

14

8 U.S.C. § 1252(e)(3)(A).

Respondents argue that the judicial limitation applies in this case because Petitioner is in essence challenging DHS's determination that aliens who enter without inspection are subject to mandatory detention under § 1225(b)(2), and thus, is seeking judicial review of a written policy or guideline implementing § 1225(b). Petitioner counters that § 1252(e)(3) only governs challenges to § 1225, so determining whether § 1252(e)(3) applies first requires deciding the threshold question of whether § 1226, not § 1225, governs his detention. Reply 3, Dkt. No. 11. Petitioner also argues that § 1252(e)(3) targets the process of removal directly, not detentions attendant to removal. *Id.* at 3-4.

Here, Petitioner is not challenging whether § 1225(b)(2)(A) is constitutional or whether a particular regulation or policy is lawful. Section 1252(e)(3) is subtitled "Challenges on validity of the system." 8 U.S.C. § 1252(e)(3). Section 1252(e)(3) does not strip Petitioner's right to challenge his detention under the specific facts of his case. *See, e.g.*, *Castro v. Noem*, Case No. 1:25-cv-01129-KWR-LF, 2026 WL 280470, at *2 (D.N.M. Feb. 3, 2026) (Riggs, J.) ("Respondents cite to § 1252(e)(3). But Petitioner does not challenge the legality or constitutionality of any regulation implementing removal procedures."); *Rodriguez-Novoa v. Lyons*, No. 1:25-cv-01073-SMD-GBW, Temporary Restraining Order 3-4 (D.N.M. Dec. 23, 2025) (Davenport, J.) (rejecting argument that § 1252(e)(3) strips jurisdiction to consider habeas challenge to government's authority to detain him under § 1225(b), as it is not challenge to validity of statutory scheme itself).

Next, Respondents argue that Section 1252(g) bars jurisdiction to review Petitioner's claims altogether. Section 1252(g) provides:

> [N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General *to commence*

> *proceedings*, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (italics added). Respondents assert that, because detention arises from the decision to commence removal proceedings against an alien, § 1252(g) bars judicial review of Petitioner's claims. Petitioner replies that § 1252(g) is much narrower than Respondents assert, and that challenging detention is a separate action. *See* Reply 4-5, Dkt. No. 11.

Indeed, the Supreme Court has instructed that § 1252(g) narrowly applies to only three specific actions – the decision or action to commence proceedings, adjudicate cases, or execute removal orders. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999). As Petitioner points out, he is not asking the Court to second-guess Respondents' discretionary decision to commence removal proceedings against him. Rather, he is challenging a separate matter – whether he is subject to mandatory detention under § 1225 or discretionary detention under § 1226. Notably, the facts in this case demonstrate that the decision to detain Petitioner did not occur at the same time Respondents initiated removal proceedings against him. Detention was thus a separate action from the commencement of removal proceedings. Consequently, § 1252(g) does not strip the Court of jurisdiction to consider the claims in the Petition. *See Jennings*, 583 U.S. at 294 (construing § 1252(g) as limited to just the three actions themselves – commencing proceedings, adjudicating cases, or executing removal actions – and not sweeping in any claim that could technically arise from the listed actions); *Aguilar v. Bondi*, Case No. 1:25-cv-00996-KWR-KK, 2026 WL 84520, at *3 n.2 (D.N.M. Jan. 12, 2026) (Riggs, J.) (explaining that § 1252(g) does not bar habeas action in which petitioner asks legal question separate from decision to commence removal proceedings against him, to wit, whether he is subject to mandatory detention under § 1225(b)(2)(A) or discretionary detention under § 1226(a)).

Finally, Respondents argue that § 1252(b)(9) divests this Court of jurisdiction to review the Petition. Section 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision … to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). Section 1252(a)(5) provides that a petition for review filed with the court of appeals is the "sole and exclusive means for judicial review of an order of removal…" 8 U.S.C. § 1252(a)(5).

According to Respondents, § 1252(a)(5) and § 1252(b)(9), read together, channel review of all claims related to a removal proceeding, including challenges to the decision to detain an alien, to the appropriate court of appeals. As Petitioner again argues, he is not challenging a legal issue arising from the initiation of removal proceedings or of a final order of removal. He contends that forcing him to wait years for a petition for review to resolve his claim that he should receive a bond hearing at the outset of his detention would deprive him of any meaningful chance for judicial review.

The Court agrees that § 1252(b)(9) does not strip this Court of jurisdiction to consider the Petition. The Petition challenges only whether Petitioner is entitled to a bond hearing under § 1226 or is instead subject to mandatory detention under § 1225(b)(2)(A). That legal question does not arise from the action taken or proceeding brought to remove him, and thus, § 1252(b)(9) does not bar this Court's consideration of the Petition. *Cf. Jennings*, 583 U.S. at 293-95 (concluding that § 1252(b)(9) does not present jurisdictional bar to Court's consideration of whether certain statutory provisions require detention without bond hearing); *Mukantagara v. U.S. Dep't of Homeland*

*Security*, 67 F.4th 1113, 1116 (10th Cir. 2023) (holding that § 1252(b)(9) did not bar judicial review of USCIS decision to terminate plaintiffs' refugee status because it is not a decision to commence proceedings, much less adjudicate a case or execute a removal order); *Ochieng v. Mukasey*, 520 F.3d 1110, 1115 (10th Cir. 2008) (explaining that alien may challenge detention under § 1226(c) through a § 2241 habeas corpus proceeding and that 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) do not apply where alien is not seeking review of an order of removal, but review of his detention). To hold otherwise, and to expansively interpret "arising from," would effectively deprive the detainee of any meaningful chance for judicial review if he had to wait for the final order of removal. *Cf. Jennings*, 583 U.S. at 293 ("Interpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place.").[8]

For the foregoing reasons, the Court recommends assuming jurisdiction to consider the merits of the instant Petition.

**B. The Court should not deny the Petition for failure to exhaust administrative remedies.**

The INA mandates exhaustion as to final orders of removal, but it contains no exhaustion provision regarding challenges to preliminary custody or bond determinations. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Although § 2241 does not expressly require a petitioner to exhaust direct appeals before filing a petition for habeas corpus, as a prudential matter, habeas petitioners must exhaust available administrative remedies before seeking habeas relief

---

[8] Respondents argue that *Jennings* specifically noted that the parties "are not challenging the decision to detain them in the first place or to seek removal." *Jennings*, 583 U.S. at 294. While *Jennings* did not conclusively decide the issue here, its reasoning equally applies to a challenge to the legal question of whether Petitioner is entitled to a bond hearing.

under § 2241. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *overruled on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Where exhaustion is not statutorily required, "sound judicial discretion governs." *Gonzalez*, 355 F.3d at 1016 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). "A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." *Garza*, 596 F.3d at 1203.

It is undisputed that Petitioner did not ask for a bond hearing following his detention. Petitioner nonetheless argues that administrative exhaustion is not required in this case based on futility. He argues that immigration judges are instructed to treat *Yajure Hurtado* as binding precedent precluding them from considering bond. According to Petitioner, he did not seek bond re-determination in light of *Yajure Hurtado*, noting noncitizens have only one chance to seek a custody redetermination hearing. *See* 8 C.F.R. § 1003.19(e) ("After an initial bond redetermination, an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination."). For their part, Respondents contend that Petitioner is not excused from requesting a bond hearing because even a high probability of denial does not permit waiving exhaustion.

The BIA's *Yajure Hurtado* decision is binding on immigration courts and appears to categorically deny relief to noncitizens like Petitioner who DHS now considers to be subject to mandatory detention under § 1225(b). If Petitioner had asserted his right to a bond hearing in his immigration case, the immigration judge, being bound by *Yajure Hurtado*, would deny his request due to lack of jurisdiction to grant bond. To adopt Respondents' position under these circumstances would amount to reading the futility exception out of existence. Consequently, the Court

19

recommends finding that the futility exception to exhaustion applies and this Court may consider the habeas petition. *Cf. Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-010131-KG-JFR, 2025 WL 3187432, at *4 (D.N.M. Nov. 14, 2025) (Gonzales, J.) ("Under *Hurtado*, Immigration Judges ("IJs") lack jurisdiction to provide § 1226(a) bond hearings to individuals in Mr. Pu Sacvin's position, rendering any attempt to seek relief directly from the agency futile."); *Mateo Francisco v. Dedos*, No. 1:25-cv-1229 MIS-GJF, 2026 WL 145456, at *8 (D.N.M. Jan. 20, 2026) (Fouratt, J.) (explaining that, where *Yajure Hurtado* would compel immigration judge to deny bond request for lack of jurisdiction, the futility exception to exhaustion applies and court may consider habeas petition), *PFRD adopted by* 2026 WL 300319 (D.N.M. Feb. 4, 2026).

### C.  *Maldonado Baustista* is not entitled to preclusive effect as to this Petition.

In the Petition, Mr. Betancourth Espinal asserts that he seeks to enforce his rights as a member of the Bond Denial Class certified in *Maldonado Bautista v. Santacruz*, Case No. 5:25-cv-01873-SSS-BFM (C.D. Cal.). Petition ¶ 6, Dkt. No. 1. As relevant here, the district court in *Maldonado Bautista* granted the petitioners' motion for class certification of the following "**Bond Eligible Class**: All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Maldonado Bautista*, 2025 WL 3288403, at *1 (Nov. 25, 2025). It also concluded that § 1226(a) governs the detention of such petitioners and declared the new DHS Policy unlawful. *See Maldonado Bautista*, 2025 WL 3289861 at *1-2, 5, 11 (Nov. 20, 2025). In an amended order, the district court granted the petitioners' motion for partial summary judgment, granted their motion to certify the Bond Eligible Class as to their claims that the DHS Policy violates the INA

and statutory due process, and vacated the DHS Policy under the APA as contrary to law. *Maldonado Bautista*, 2025 WL 3713987, at *1, 32 (Dec. 18, 2025). Respondents appealed to the Ninth Circuit. *See Maldonado Bautista v. Santacruz*, Case No. 5:25-cv-01873-SSS-BFM, 2026 WL 639921, at *1 (C.D. Cal. Feb. 25, 2026) (order denying respondents' application to stay while they appeal).

After briefing was completed in this case, the Ninth Circuit granted a temporary administrative stay of the district court's declaratory judgment pending a ruling on the Government's emergency motion for a stay pending appeal, "insofar as the district court's judgment extends beyond the Central District of California." *Maldonado Bautista*, No. 26-1044, Order (9th Cir. Mar. 6, 2026).[9] The Court therefore recommends determining that *Maldonado Bautista* is not binding on this case based on the appeal of the decision and the Ninth Circuit's order. *See id. See also Ramirez v. Noem*, No. 2:26-cv-00063-SMD-GJF, 2026 WL 381869, at *6 (D.N.M. Feb. 11, 2026) (Davenport, J.) ("While the Court finds *Bautista* persuasive, it believes declaring the decision binding is premature given the current splits among districts and ongoing procedural uncertainties."). Consequently, the Court need not reach Respondents' other arguments for why the Court should not give preclusive effect to the *Maldonado Bautista* decision.

### D.  Petitioner's detention for months without a bond hearing violates the INA.

Petitioner argues that § 1226 governs the detention of aliens like himself who were already present in the interior of the United States, while § 1225 applies to people who recently crossed the border or are arriving at ports of entry. He relies on the plain text of the statutes, the legislative history, longstanding practice, *Jennings*, and the reasoning of the majority of district courts to have considered the issue. For their part, Respondents assert that Petitioner is subject to mandatory

---

[9] At the evidentiary hearing, counsel for Petitioner acknowledged the Ninth Circuit's stay and the limited application of *Maldonado Bautista* to petitioners outside the Central District of California.

21

detention under § 1225, employing the reasoning of the BIA's *Yajure Hurtado* decision, *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), the presiding judge's decision in *Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at \*2, 33 (D.N.M. Jan. 20, 2026), as well as a minority of other district court decisions. *See* Mot. 10-12, Dkt. No. 8. According to Respondents, that undocumented aliens present in the United States for years are nonetheless applicants for admission "reflects Congress' presumption that an alien who is present in the United States is here by choice and would like to remain in the United States." *Id.* at 13.

This Court parts ways with Respondents' analysis and instead concludes from the text and structure of § 1225 that "seeking admission" has a meaning independent of "applicant for admission." The text of § 1225(b)(2)(A) makes clear that it applies to (1) "an applicant for admission", (2) who is "seeking admission," and (3) "is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). The provision therefore limits mandatory detention only to those applicants for admission who are also seeking admission. *See Castanon-Nava v. U.S. Dept. of Homeland Security*, 161 F.4th 1048, 1061 (7th Cir. 2025) ("And while a noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely[] limits its scope to an 'applicant for admission' who is 'seeking admission,' § 1225(b)(2)(A)."); *Singh*, 2026 WL 146005, at \*20-21 (explaining that "seeking admission" has separate meaning and narrows broader universe of "applicants for admission"). To construe "applicant for admission" to be the same as an alien "seeking admission" would render the latter phrase surplusage. *See Castanon-Nava*, 161 F.4th at 1061. Had Congress intended all applicants for admission to be detained, it could have drafted § 1225(b)(2)(A) far more simply: "Subject to subparagraphs (B) and (C), if the examining immigration officer determines that an applicant for admission is not clearly and beyond a doubt

22

entitled to be admitted, the alien shall be detained…." Instead, Congress limited detention to those applicants for admission who are not clearly and beyond a doubt entitled to be admitted *and* who are "seeking admission." 8 U.S.C. § 1225(b)(2)(A). The statute's use of the present participle "seeking" demonstrates the need for the noncitizen to be taking some action *at present* in attempting to gain admission. This interpretation also accords with § 1225(a)(3), which suggests the terms are not coterminous: "All aliens (including alien crewmen) who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3) (emphasis added). If the terms had the same meaning, it would be redundant to use "seeking admission" in § 1225(a)(3).

The Court is well aware that two circuits, in 2-1 decisions, have concluded the opposite. After the completion of briefing in this case, the Eighth Circuit agreed with the Fifth Circuit's reasoning in *Buenrostro-Mendez* that the phrase "applicant for admission" and "seeking admission" mean the same. *Avila v. Bondi*, __ F.4th __, 2026 WL 819258, at *3 (Mar. 25, 2026) (quoting with approval *Buenrostro-Mendez*, 166 F.4th at 502). Both circuits held that an alien who entered the United States many years ago without inspection and lacking legal documents authorizing his admission may be detained without bond under § 1225(b)(2)(A). *Id.* at *1, 6; *Buenrostro-Mendez*, 166 F.4th at 498-500. Neither *Avila* nor *Buenrostro-Mendez* is binding on this Court, however, and this Court declines to follow their reasoning.

Having determined that "seeking admission" has its own separate meaning, the Court must next discern what that meaning is. Guided by the statutory definition of "admission," the Court concludes that "seeking admission" is seeking "lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). While the term "lawful" is not separately defined in the INA, *see* 8 U.S.C. § 1101, the term lawful entry

23

refs to the process in which an alien is inspected and granted entry into the United States by an immigration officer. *See Hing Sum v. Holder*, 602 F.3d 1092, 1096 (9th Cir. 2010) (explaining that "admission" under § 1101(a)(13)(A) "refers to a procedurally regular admission and not a substantively lawful admission"); *Singh*, 2026 WL 146005, at *35 ("Admission requires at minimum 'procedural regularity' with entry procedures.") (quoting *Matter of Quilantan*, 25 I. & N. Dec. 285, 290 (BIA 2010)).

Petitioner urges the Court to find that § 1225(b)(2) applies to people arriving at United States' ports of entry or who recently entered the United States, as § 1225's framework is premised on inspection at the border of people who are "seeking admission" to the United States. Indeed, the Supreme Court stated as much. *See Jennings*, 583 U.S. at 289 ("U.S. immigration law authorizes the Government to detain certain aliens seeking admission *into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).") (Emphasis added).

The structure and title of § 1225 also support this interpretation. The title of a statutory section can be a tool "'for the resolution of a doubt' about the meaning of a statute." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)). Section 1225 is titled, "*Inspection* by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." 8 U.S.C. § 1225 (emphasis added). Those terms suggest that § 1225 applies during inspection at the border. The text of § 1225 reinforces that its scope is focused on the inspection process. *See*, *e.g.*, 8 U.S.C. § 1225(a)(3). "By anchoring § 1225 in inspection concepts that Congress defines, it signals that an inspection at the threshold of entry triggers the powers and procedures that follow." *Singh*, 2026 WL 146005, at *14. The

24

implementing regulations likewise tie such inspections to the border. *See* 8 C.F.R. § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection, or as otherwise designated in this section."). Consequently, the text and structure of § 1225 suggest that an alien "seeking admission" is one who does so at the border.

The legislative history accords with this construction. Before passage of the IIRIRA, 8 U.S.C. § 1252(a)(1) provided that noncitizens arrested in the United States pending a determination of deportability could be released on bond. *See* 8 U.S.C. § 1252(a)(1) (1996). After passage of the IIRIRA, § 1226(a) now governs the apprehension and detention of aliens on a warrant. 8 U.S.C. § 1226(a). When Congress passed the IIRIRA, it noted that the new § 1226(a) "restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. 104-469(I), at 229 (Mar. 4, 1996). The Executive Office for Immigration Review drafted regulations in 1997 similarly explaining that noncitizens present in the country without having been admitted or paroled, despite remaining applicants for admission, were nonetheless eligible for bond and bond redetermination under § 1226. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Given the longstanding practice of detaining noncitizens living in the United States on an arrest warrant and with the chance for bond, the legislative history suggests that Congress did not intend to alter this practice with the IIRIRA. Moreover, the fact that for decades the Executive Branch also did not interpret the IIRIRA

in the manner urged by Respondents here or to use its purported mandatory detention authority signifies that "seeking admission" meant seeking lawful entry at the border. *Cf. Bankamerica Corp. v. United States*, 462 U.S. 122, 130-32 (1983) (explaining that, although authority granted by Congress cannot evaporate through lack of administrative exercise, the Government's failure for over 60 years to exercise the power it now claims under the statute strongly suggests that the statute should not be interpreted as granting such power).

Further supporting this interpretation is the following statutory history, as set forth by the Fifth Circuit in *Buenrostro-Mendez*:

> When Congress passed IIRIRA, it estimated that the detention mandate in § 1226(c) would require the detention of 45,000 new immigrants. See H.R. Rep. No. 104-469, pt. 1 at 118, 120, 123 (1996). Supposedly because Congress was worried about insufficient detention capacity, it included a provision that permitted delaying implementation of § 1226(c) for two years. IIRIRA § 303(b), 110 Stat. 3009-586 to 3009-587. IIRIRA did not include a similar provision for § 1225(b)(2)(A), even though, under the government's interpretation, § 1225(b)(2)(A) would require the detention of far more than 45,000 aliens. *See* H.R. Rep. No. 104-469, pt. 1, at 111 (estimating that about two million aliens who had entered without inspection were present in the United States around IIRIRA's enactment in 1996).

166 F.4th at 507. Although the majority in *Buenrostro-Mendez* declined to speculate on Congress's reasons for the deferred implementation of § 1226(c) but not of § 1225(b)(2)(A), that difference is compelling evidence that Congress did not view the IIRIRA as mandating the detention under § 1225(b)(2)(A) of the estimated two million aliens present in the United States who had not been admitted. *See id.* at 516 (J. Douglas, dissenting) ("Congress did not secretly require two million noncitizens to be detained without bond, when nothing like this had ever been done before, and the whole history of American immigration law suggested it would not be. We would expect more than simple statutory silence if, and when, Congress were to intend a major departure.") (internal quotations, citation, and footnote omitted). As Judge Douglas noted, construing the statute to expect the detention of millions of aliens in detention facilities strained by merely 45,000 people

26

is a proverbially large elephant stuffed in a very small mousehole, and not one Congress envisioned when it passed the IIRIRA. *Id.* at 514-17.

The recent enactment of the Laken Riley Act adds weight to this understanding of Congressional intent. The Laken Riley Act expressly required detention for noncitizens inadmissible under § 1182(a)(6)(A) – aliens present without being admitted or paroled – if they commit certain listed crimes. That specification in the Act would not have been necessary if Congress understood § 1225(b)(2) to require mandatory detention of all inadmissible aliens already present in the United States. *See*, *e.g.*, *Munoz Teran v. Bondi*, Case No. 2:25-cv-01218-KWR-SCY, 2026 WL 161527, at *4 (D.N.M. Jan. 21, 2026) (Riggs, J.) (explaining that respondents' interpretation would render superfluous Laken Riley Act); *Cortes v. Holt*, Case No. CIV-25-1176-SLP, 2025 WL 147432, at *1, 6 (W.D. Okla. Jan. 20, 2026) (concluding that enactment of Laken Riley Act lends further support for application of § 1226 to detention of aliens who entered without inspection or admission and resided in United States for years).

Significantly, immigration officers do not detain aliens under § 1225 pursuant to a warrant, whereas § 1226 expressly provides for the arrest and detention of an alien on a warrant. 8 U.S.C. § 1226(a). The regulations implementing § 1226 confirm that the Form I-200 is used for arrests pursuant to an immigration officer's authority under § 1226. *See* 8 C.F.R. § 236.1(b)(1) ("At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest."). Section 1226 also applies to aliens who are charged as inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E) (explaining that Attorney General shall take into custody any alien who is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) and is charged with certain identified crimes).

The overall structure of §§ 1225 and 1226 demonstrates that detention under § 1225 is done as part of the inspection process upon arrival at the border before an alien makes entry into the United States, and that after entry, § 1226 – with its warrant and bond hearing protections – applies to the apprehension and detention of inadmissible aliens within the interior of the country. *See Reyes-Martinez v. Woosley*, Civil Action No. 4:25-cv-150-RGJ, 2025 WL 3680330, at *7 (W.D. Ky. Dec. 18, 2025) (explaining that § 1225 detainees are detained upon arrival as a statutory function of the inspection process, not via an arrest pursuant to administrative warrant, which supports conclusion that § 1225 is for individuals seeking admission at the border who do not need to be arrested). After all, "government intrusions have always been tolerated at the border that would be intolerable in the interior, for the obvious reason that citizens and noncitizens alike expect to be able to go about their business without having to show that they are 'clearly and beyond doubt entitled to be admitted' if taken, or mistaken, for an otherwise inadmissible noncitizen." *Buenrostro-Mendez*, 166 F.4th at 519 (Douglas, J., dissenting).

The presiding judge in *Singh*, however, said that it would be "mistaken to read the provision as limited exclusively to physical border encounters." 2026 WL 146005, at *21. *Singh* held that an asylum applicant whose application is pending is "seeking admission" and can be detained under § 1225(b)(2)(A). *See id.* at *35-36. *Singh* explained: "An alien may seek lawful entry at a port of entry, but an alien may also seek lawful admission from within the United States through statutory mechanisms such as an application for adjustment of status on Form I-485 or other congressionally authorized procedures for obtaining lawful admission." *Id.* at *21. *Singh* further reasoned that "seeking can also occur in the interior of the United States … when an alien who has not been admitted, an applicant for admission, makes some attempt to gain lawful admission, such as filing for an asylum or a visa." *Id.* at 35.

The Supreme Court, however, has clarified that lawful status and admission "are distinct concepts in immigration law." *Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021). An adjustment of status under § 1255 of the INA is a way for a nonimmigrant – a noncitizen lawfully present in the country on a designated, temporary basis – to obtain lawful permanent resident ("LPR") status generally so long as the nonimmigrant's presence is pursuant to a lawful admission. *See id.* at 411-12. In *Sanchez*, the noncitizen entered unlawfully, and after approximately 14 years, he applied for Temporary Protected Status ("TPS"), entitling him to stay and work in the United States for as long as unsafe living conditions existed in his home country. *See id.* at 411-13. He applied for an adjustment to LPR status, which the USCIS denied because he had not been lawfully admitted to the United States. *Id.* at 413. The Supreme Court agreed because, although the TPS program gives foreign nationals nonimmigrant status, it does not admit them. *Id.* at 414. As relevant here, the Supreme Court explained:

> On the one hand, a foreign national can be admitted but not in lawful status—think of someone who legally entered the United States on a student visa, but stayed in the country long past graduation. *On the other hand, a foreign national can be in lawful status but not admitted—think of someone who entered the country unlawfully, but then received asylum*. The latter is the situation Sanchez is in, except that he received a different kind of lawful status. The TPS statute permits him to remain in the country; and it deems him in nonimmigrant status for purposes of applying to become an LPR. But the statute does not constructively "admit" a TPS recipient—that is, "consider[ ]" him as having entered the country "after inspection and authorization." § 1254a(f)(4); § 1101(a)(13)(A). And because a grant of TPS does not come with a ticket of admission, it does not eliminate the disqualifying effect of an unlawful entry.

*Id.* at 415-16 (emphasis added).

Based on *Sanchez*, the Court concludes that the filing of an application for asylum is not "seeking admission"; rather, it is seeking a "lawful status." As the Tenth Circuit elaborated:

> "[A]dmitted" and "admission" are defined as "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). This definition "is limited and

29

does not encompass a post-entry adjustment of status," because it "refers expressly to *entry into* the United States, denoting by its plain terms passage into the country from abroad at a port of entry." *Negrete–Ramirez* [*v. Holder*], 741 F.3d [1047,] 1051 [(9th Cir. 2014)]; *see Papazoglou* [*v. Holder*], 725 F.3d [790,] 793 [(7th Cir. 2013)] ("That provision therefore encompasses the action of an entry into the United States, accompanied by an inspection or authorization."); *Bracamontes* [*v. Holder*], 675 F.3d [380,] 385 [(4th Cir. 2012)] ("Clearly, neither term includes an adjustment of status; instead, both contemplate a physical crossing of the border following the sanction and approval of United States authorities."); *Martinez* [*v. Mukasey*], 519 F.3d [532,] 544 [(5th Cir. 2008)] (recognizing that " 'admission' is the lawful *entry* of an alien after inspection, something quite different ... from post-entry adjustment of status"). Under the definition, Mr. Medina–Rosales was not "admitted" when he became an LPR after post-entry adjustment of status, because he did not enter the United States when he adjusted to that status.

*Medina-Rosales v. Holder*, 778 F.3d 1140, 1144-45 (10th Cir. 2015) (italics emphasis in original).

*See also Matter of V-X-, Respondent*, 26 I. & N. Dec. 147, 147 ("A grant of asylum is not an 'admission' to the United States under section 101(a)(13)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(13)(A) (2006)."). Requesting asylum is thus a request for an adjustment of status, not a request for admission. Because "seeking admission" requires actively requesting admission, the filing of an application for asylum does not amount to "seeking admission" within the meaning of § 1225(b)(2)(A).

Petitioner entered the United States over four years ago. Nearly a year later, in December 2022, he applied for asylum. Despite having no criminal history and having complied with all conditions of release, he was detained on November 21, 2025, pursuant to a Warrant for Arrest, Form I-200, in the interior of the country. A Form I-200 is found within Section 1226 implementing regulations, 8 C.F.R. § 236, which also require a bond hearing. At the time of his detention, Petitioner was not "seeking admission," as he had already entered the United States years prior. He therefore is detained under § 1226 and is entitled to a bond hearing. The failure to provide him the requisite prompt bond hearing violates the INA. The Court therefore recommends granting the Petition on Count I.

30

### E. Petitioner's detention for months without a bond hearing also violates procedural due process.

Respondents assert that Petitioner is entitled to no more process than that prescribed by statute. Mot. 14, Dkt. No. 8. Even assuming that Petitioner is only entitled to the process afforded by Congress, Congress authorized noncitizens in Petitioner's situation to be afforded a bond hearing under § 1226. Consequently, Respondents' detention of Petitioner for approximately four months without the requisite bond hearing violates both his statutory rights and his procedural due process rights. The Court thus recommends that the Petition be granted on Count II as well. Given this recommendation, the Court need not go further and decide whether Petitioner has additional due process rights beyond those conferred by statute.

### F. Prompt bond hearing in accordance with § 1226(a) is appropriate remedy for violation of INA.

Respondents contend that there is no legal authority justifying immediate release. Relying on § 1226(e), they argue that the Attorney General's discretionary judgment regarding the application of § 1226 is not subject to review, and thus, this Court does not have authority to order immediate release from detention. Section 1226(e) says:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e). According to Respondents, it makes "little sense for Congress' clear intent to be so easily thwarted by proactive habeas filings demanding immediate release from federal courts." Mot. 25, Dkt. No. 8.

The Court recommends that the appropriate remedy for the § 1226 violation is a prompt bond hearing before an immigration judge, not immediate release. *See*, *e.g.*, *Castillo v. De Andra Ybarra*, No. CIV 25-1074 JB/JFR, 2026 WL 370497, at *36 (D.N.M. Feb. 10, 2026) (Browning,

31

J.) (explaining that, because noncitizen was not seeking admission, United States could not detain him under § 1225(b)(2), so it must detain him under § 1226(a) and afford him procedural protections the statute provides). As for the timing of the bond hearing, the Court recommends that the bond hearing be held within seven days. If Respondents are unable or decline to follow § 1226's statutory requirements, the Court recommends they release him immediately. *Id.*

Petitioner additionally requests that DHS bear the burden of proof justifying his continued detention at the bond hearing. Petition ¶ 10, Dkt. No. 1. For the initial custody determination by the arresting immigration officer, governing regulations place the burden on the alien to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). The BIA applies the same presumption in bond hearings before immigration judges. *See Castillo*, 2026 WL 370497, at *42 (quoting *In Re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999)). Petitioner nevertheless argued at the hearing that the burden of proof should flip under the circumstances here where the noncitizen was initially released, complied with all conditions of release, and has no criminal history. Given that there was no material change in his circumstances, Petitioner asserts that DHS should bear the burden to show detention is justified.

Some courts have agreed and have shifted the burden to the government at the bond hearing to show that Petitioner is either a danger to the community or a flight risk. *See*, *e.g.*, *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-1031 KG/JFR, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) (citing *Salazar v. Dedos*, 2025 WL 2676729, at *6 (D.N.M.)). The presiding judge, however, concluded that a remedy challenging the burden at a bond hearing is outside the scope of the writ of habeas corpus "unless the bond hearing's existing structure is so weighed against the alien that the alien has no chance to be released on bond." *Castillo*, 2026 WL 370497, at *42. Because a §

32

1226(a) bond hearing requires only that the alien prove that he is not a flight risk or danger to the community, the current structure does not deny an alien a meaningful chance at success at achieving release. *Id.* The Court thus recommends that the presiding judge deny Petitioner's request that Respondents carry the burden at the bond hearing and instead order that the bond hearing comply with § 1226 and its implementing regulations. *See id.*

### G. The Court need not address Petitioner's third count for substantive due process at this time.

Relying on *Zadvydas* in support of his substantive due process claim, Petitioner argues that, because there is no evidence he presents a danger or flight risk, the government has no interest in his continued detention. He further contends, "Absent any mechanism for individualized review, Petitioner faces a substantial risk of prolonged or indefinite detention under penal-like conditions without any finding that his confinement is necessary to serve the government's legitimate interests." Reply 11, Dkt. No. 11.

Because the undersigned recommends the Court grant habeas relief on the first and second counts and order a bond hearing before an immigration judge within seven days, Petitioner will receive an individualized determination of his flight risk and danger to the community. If the immigration judge finds one or both of those factors and continues to detain him, then the Government will have established an interest in his detention. Alternatively, if he is given bond and ordered released, then he will no longer face prolonged detention. Consequently, the Court recommends denying Petitioner's substantive due process claim in Count III for lack of ripeness. The Court, however, recommends dismissal without prejudice, because at some point, should his detention continue, it could become prolonged and cross over into punishment and a violation of his due process rights. *Cf. Singh*, 2026 WL 146005, at *39 (denying petitioner's substantive due process claim without prejudice to give "him the opportunity to refile should his detention extend

33

to a length of time sufficient to cross over to punishment and violate his substantive due process rights"). At this point, however, a decision on that claim would be premature.

### H.  Petitioner's request for an order enjoining transfer should be granted.

Finally, Petitioner requests an order that he not be transferred outside the District of New Mexico while his Petition is pending. Petition 21, ¶ b, Dkt. No. 1. Under the All Writs Act, courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Respondents did not specifically oppose this request in their motion to dismiss.[10] The Court thus recommends the presiding judge grant the request to enjoin Petitioner's transfer outside the District of New Mexico while this habeas petition is pending or until Petitioner receives a final order of removal. *Cf. Castillo*, 2026 WL 370497, at *44 ("[T]he Court exercises its discretion under the All Writs Act only to enjoin Petitioners' unlawful removal from New Mexico while their habeas proceedings remain pending.").[11]

### VI.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** the following:

---

[10] At the evidentiary hearing, counsel for Respondents argued for the first time that the Court lacks jurisdiction to enjoin transfer, citing *Edison v. Decker*, Civil Action No. 20-15455 (SRC), 2021 WL 1997386 (D.N.J. May 19, 2021), an out-of-circuit, non-precedential case that did not ultimately decide the jurisdictional issue, *id.* at *6. Because Respondents in their written response did not oppose Petitioner's request to enjoin transfer out of this district during the pendency of the case, and they have not provided precedential authority for their position, the Court finds that they waived any objection to the remedy.

[11] The Court is not convinced that it would necessarily lose jurisdiction even if Petitioner were transferred out of New Mexico. *Cf. Ex parte Endo*, 323 U.S. 283, 304-06 (1944) (holding that district court acquired jurisdiction of habeas case filed in district where petitioner was then located, and that court did not lose jurisdiction when the petitioner was transferred to another state where a person in whose custody the petitioner is remains within district); *Pinson v. Berkebile*, 604 F. App'x 649, 652–53 (10th Cir. Mar. 10, 2015) (holding that "the District of Colorado acquired jurisdiction when [the petitioner] filed his habeas petition" while he was held in Colorado, and that his transfer to another state "does not defeat that initial jurisdiction") (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 440–41 (2004)). The Court need not decide this issue, however, because Respondents did not timely and specifically object to the remedy.

1. The *Petition for Writ of Habeas Corpus* (**Dkt. No. 1**) should be **GRANTED** as to the first and second counts and **DENIED WITHOUT PREJUDICE** for lack of ripeness as to the third count.

2. *Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus* (**Dkt. No. 8**) should be **DENIED** as to Counts I and II, but **GRANTED** in part as to Count III, which the Court should dismiss without prejudice but for different reasons than those relied upon by Respondents.

3. The Court should **GRANT** Petitioner's requests to (a) accept jurisdiction over this matter, (b) declare that Respondents' detention of Petitioner for months without a bond hearing violates the INA and procedural due process, (c) issue a writ of habeas corpus requiring Respondents to provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226 before an immigration judge to be held within seven days; and (d) enjoin his transfer outside the District of New Mexico while this habeas petition is pending.

4. The Court should **DENY** Petitioner's request for immediate release and **DENY as moot** Petitioner's request for an order directing Respondents to show cause why this Petition should not be granted immediately.

**SO RECOMMENDED**.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

**THE HONORABLE GREGORY J. FOURATT**
**UNITED STATES MAGISTRATE JUDGE**