IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MANUEL BETANCOURTH ESPINAL,

      Petitioner,

vs.                                           No. CIV 26-0076 JB/GJF

MARY DE ANDA-YBARRA, Field Office
Director the El Paso Field Office of U.S.
Immigration and Customs Enforcement,
Enforcement and Removal Operations;
KRISTI NOEM, Secretary, U.S. Department
of Homeland Security; PAMELA BONDI,
U.S. Attorney General; Executive Office for
Immigration Review; GEORGE DEDOS, in his
Official Capacity as Warden of Torrance County
Detention Facility,

      Respondents.

**MEMORANDUM OPINION AND ORDER SUSTAINING IN PART AND OVERRULING
IN PART THE OBJECTIONS TO THE MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on the Respondents' Objections to the Proposed

Findings and Recommended Disposition, filed April 10, 2026 (Doc. 16)("Objections"). The

Honorable Gregory J. Fouratt, United States Magistrate Judge for the United States District Court

for the District of New Mexico, files the Proposed Findings and Recommended Disposition on

Petition for a Writ of Habeas (Dkt. No. 1) and Respondents' Motion to Dismiss Petition (Dkt. No.

8), filed March 27, 2026 (Doc. 15)("PFRD"). The PFRD notifies the parties of their ability to file

Objections within fourteen days and that the failure to file Objections waives appellate review.

See PFRD at 36. On April 10, 2026, the Respondents -- Mary De Anda-Ybarra, El Paso Field

Office Director of ICE, Kristi Noem,[1] Secretary of Homeland Security, Pamela Bondi,[2] U.S. Attorney General -- file their Objections to the PFRD. See Objections at 1. The primary issues that the Objections present are: (i) whether the executive branch's history of immigration enforcement is relevant to determining 8 U.S.C. § 1225's applicability; (ii) whether Petitioner Manuel Betancourth Espinal's criminal history is relevant in determining § 1225's applicability; (iii) whether the Court has jurisdiction to review Espinal's habeas petition, when the Respondents assert that 8 U.S.C. § 1252(e)(3), 8 U.S.C. § 1252(g), and 8 U.S.C. § 1252(b)(9) bar federal district court's jurisdiction; (iv) whether the Court should relax the exhaustion requirement in the Immigration and Nationality Act, because of the futility doctrine; (v) whether Espinal's detention violates the INA when the Respondents detain him under § 1225; and (vi) whether Espinal's detention violates his procedural due process rights. The Court concludes that: (i) the executive branch's history of immigration enforcement is minimally relevant to determining § 1225's applicability, because established practice may shed light on the interpretation of statutory text, but is not dispositive; (ii) Espinal's criminal history is not relevant to determining § 1225's applicability, because Congress does not predicate detention under § 1225 upon criminal history; (iii) the Court has jurisdiction to review Espinal's habeas petition, because § 1252(e)(3), § 1252(g), and § 1252(b)(9) do not bar the Court's jurisdiction; (iv) the Court relaxes the INA's exhaustion requirement, because the futility doctrine is applicable; (v) Espinal's detention does not violate the INA when the Respondents detain him under § 1225, because he is seeking admission as § 1225

---

[1] As of March 31, 2026, Noem is no longer the Secretary of Homeland Security. See Trump Ousts Noem as Homeland Security Secretary, https://www.nytimes.com/live/2026/03/05/us/trump-news (last visited April 9, 2026).

[2] As of April 2, 2026, Bondi is no longer the U.S. Attorney General. See Pam Bondi Out As Attorney General, https://www.politico.com/news/2026/04/02/pam-bondi-attorney-general-justice-department-00855413 (last visited April 9, 2026).

defines; and (vi) Espinal's detention does not violate his procedural due process rights. The Court therefore sustains in part and overrules in part the Respondents' Objections to Magistrate Judge Fouratt's PFRD.

**FACTUAL BACKGROUND**

No party objects to the PFRD's factual background. Concluding that the facts as the PFRD states are not clearly erroneous, the Court adopts the PFRD's facts. See Alexander v. Kirkpatrick, 435 F. Supp. 3d 1216, 1221-22 (D.N.M. 2020)(Browning, J.)("Because the parties have not objected to it, the Court does not review the PFRD de novo, but rather reviews [the PFRD] to determine if it is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.").

Espinal is a citizen of Nicaragua. See PFRD at 4. Espinal enters the United States on or about December 30, 2021, near Eagle Pass, Texas, when he is about twenty-nine years old. See PFRD at 4. On or about the same day, the United States Department of Homeland Security ("DHS") places him in removal proceedings pursuant to 8 U.S.C. § 1229(a) and releases him on his own recognizance. See PFRD at 4. Since then, Espinal resides continuously in the United States and meets all obligations that DHS imposes on him regarding the conditions of his release. See PFRD at 5.

On or around February 25, 2022, Espinal reports to the local Enforcement and Removal Office ("ERO") in Denver, Colorado, where he is served with a Notice to Appear. See PFRD at 5. The Notice to Appear charges him with being "an alien present in the United States who has not been admitted or paroled" under INA § 212(a)(6)(A)(i). PFRD at 5.

On December 22, 2022, Espinal files an application for Asylum, Withholding of Removal and Convention Against Torture. See PFRD at 5. Espinal's counsel files a motion to change venue which is granted, and after which, the immigration court issues a hearing notice for September 6,

2029.  See PFRD at 5.

On November 19, 2025, Espinal reports as requested to the Birmingham, Alabama, ERO office.  See PFRD at 5.  When he notifies the immigration officer that he recently moved to Illinois, the officer tells him to report within ten days to the local ERO office in Illinois.  See PFRD at 5.  When Espinal complies by reporting to the Chicago ERO office on November 21, 2025, he is detained pursuant to a Warrant for Arrest, Form I-200, despite a lack of criminal history.  See PFRD at 5.  Espinal has not been given an opportunity to post bond, and he has not requested a bond hearing.  See PFRD at 5.  Espinal had a merits hearing in his immigration case set for April 22, 2026.  See PFRD at 5.  The Torrance County Detention Facility is detaining Espinal.  See PFRD at 5.

## LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition.  See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense. . . .").  Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  Finally, when resolving objections to a Magistrate Judge's proposal, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is

made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute." United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, and Contents, 73 F.3d 1057, 1059 (10th Cir.1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)). As the United States Court of Appeals for the Tenth Circuit notes, "the filing of objections advances the interests that underlie the Magistrate's Act, including judicial efficiency." One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir.1986); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit holds "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." One Parcel, 73 F.3d at 1060. "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" One Parcel, 73 F.3d at 1059. In addition to requiring specificity in objections, the Tenth Circuit states that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). See United States v. Garfinkle, 261 F.3d 1030, 1031 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). In an unpublished opinion, the Tenth Circuit states that "the district court correctly held that [a

petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v.

Scibana, 229 Fed. App'x 795, 796 (10th Cir.2007).[3]

In One Parcel, the Tenth Circuit, in accord with other Courts of Appeals, expands the

waiver rule to cover objections that are timely but too general.  See One Parcel, 73 F.3d at 1060.

The Supreme Court of the United States -- in the course of approving the United States Court of

Appeals for the Sixth Circuit's use of the waiver rule -- notes:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings. The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. *See* S.Rep. No. 94-625, pp. 9-10 (1976)(hereafter Senate Report); H.R.Rep. No. 94-1609, p. 11 (1976), U.S.Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report).  There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate. Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates. Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or *ruling* on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time." *See* Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis

---

[3]Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citing In re Citation of Unpublished Opinions/Orders & Judgments, 151 F.R.D. 470 (10th Cir. 1993)).  The Court concludes that Pevehouse v. Scibana has persuasive value with respect to a material issue, and will assist the Court in its disposition of the matters now before it.

added)(hereafter Senate Hearings). The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice. *See id.,* at 11 ("If any objections come in, . . . I review [the record] and decide it. If no objections come in, I merely sign the magistrate's order."). The Judicial Conference of the United States, which supported the *de novo* standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report. *See* Senate Hearings, at 35, 37. Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review. There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed. It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort. We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn*, 474 U.S. at 150-52 (emphasis in original).

The Tenth Circuit also notes, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" One Parcel*, 73 F.3d at 1060 (quoting Moore v. United States*, 950 F.2d 656, 659 (10th Cir.1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations."). Cf. Thomas v. Arn*, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard"). In One Parcel*, the Tenth Circuit notes that the district judge decides sua sponte to conduct a de novo review despite the objections' lack of specificity, but the Tenth Circuit deems the issues waived on appeal, because waiver advances the interests underlying the waiver rule. See 73 F.3d at 1060-61 (citing cases from other Courts of Appeals

where district courts elect to address merits despite potential application of waiver rule, but Courts of Appeals opt to enforce waiver rule).

Where a party files timely and specific objections to the Magistrate Judge's PFRD, on "dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing." United States v. Raddatz, 447 U.S. 667, 674 (1980). "[I]n providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate judge's proposed findings and recommendations." United States v. Raddatz, 447 U.S. at 676 (quoting 28 U.S.C. § 636(b) and citing Mathews v. Weber, 423 U.S. 261, 275 (1976)). The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation" when conducting a de novo review of a party's timely, specific objections to the magistrate judge's report. In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995). "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence . . . the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." Gee v. Estes, 829 F.2d 1005, 1008-09 (10th Cir. 1987).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the Magistrate Judge's report "based upon conflicting evidence or testimony." Gee v. Estes, 829 F.2d at 1009. On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable  deference to the magistrate's order." Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988). A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record." Garcia v. City of Albuquerque, 232 F.3d 760, 766 (10th Cir.2000). "[T]he district court is presumed to know that de novo review is required. Consequently, a brief order expressly stating the court conducted de novo review is sufficient." Northington v. Marin, 102

F.3d 1564, 1570 (10th Cir. 1996)(citing In re Griego, 64 F.3d at 583-84).  "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise."  Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993).  The Tenth Circuit holds that a district court properly conducts a de novo review of a party's evidentiary objections when the district court's "terse" order contains one sentence for each of the party's "substantive claims" and does "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion."  Garcia v. City of Albuquerque, 232 F.3d at 766.  The Tenth Circuit explains that brief district court orders that "merely repeat[ ] the language of § 636(b)(1) to indicate its compliance" are sufficient to demonstrate that the district court conducts a de novo review:

> It is common practice among district judges in this circuit to make such a statement and adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis. We cannot interpret the district court's statement as establishing that it failed to perform the required de novo review.

In re Griego, 64 F.3d at 584.

Notably, because "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations," United States v. Raddatz, 447 U.S. at 676 (emphasis omitted), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," 28 U.S.C. § 636(b)(1).  See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d at 724-25 (holding that the district court's adoption of the Magistrate Judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and United States v. Raddatz require).

Where no party objects to the Magistrate Judge's PFRD, the Court reviews, as a matter of course and in the interests of justice, the Magistrate Judge's recommendations.  In Pablo v. Soc.

Sec. Admin., No. CIV 11-0132 JB/ACT, 2013 WL 1010401 (D.N.M. February 27, 2013)(Browning, J.), the plaintiff fails to respond to the Magistrate Judge's PFRD, and thus waives his right to appeal the recommendations, but the Court nevertheless conducts a review. See 2013 WL 1010401, at *1, *4. The Court generally does not, however, "review the PFRD de novo, because the parties have not objected thereto, but rather review[s] the recommendations to determine whether they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion." Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4. The Court, thus, does not determine independently what it would do if the issues had come before the Court first, when there is no objection, but rather adopts the PFRD where "'the Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.'" Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *3 (quoting Workheiser v. City of Clovis, No. CIV 12–0485 JB/GBW, 2012 WL 6846401, at *3 (D.N.M. December 28, 2012)(Browning, J.)). See Alexandre v. Astrue, No. CIV 11-0384 JB/SMV, 2013 WL 1010439, at *4 (D.N.M. February 27, 2013)(Browning, J.)("The Court rather reviewed the findings and recommendations . . . to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion. The Court determines that they are not, and will therefore adopt the PFRD."); Trujillo v. Soc. Sec. Admin., No. CIV 12-1125 JB/KBM, 2013 WL 1009050, at *5 (D.N.M. February 28, 2013)(Browning, J.)(adopting the PFRD, and noting: "The Court did not review the ARD de novo, because Trujillo has not objected to it, but rather reviewed the . . . findings and recommendation to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, which they are not."). This review, which is deferential to the Magistrate Judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or a full-fledged review. Accordingly, the Court considers this standard of review appropriate.

- 10 -

See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.").  The Court is reluctant to have no review at all if its name is at the bottom of the order adopting the Magistrate Judge's PFRD.

### ANALYSIS

The Court sustains in part and overrules in part the Respondents' Objections to Magistrate Judge Fouratt's PFRD.  First, the executive branch's history of immigration enforcement is minimally relevant to determining § 1225's applicability, because established practice may shed light on the interpretation of statutory text, but is not dispositive.  Second, Espinal's criminal history is not relevant to determining § 1225's applicability, because Congress does not predicate detention under § 1225 upon criminal history.  Third, the Court has jurisdiction to review Espinal's habeas petition, because § 1252(e)(3), § 1252(g), and § 1252(b)(9) do not bar the Court's jurisdiction.  Fourth, the Court relaxes the INA's exhaustion requirement, because the futility doctrine is applicable.  Fifth, Espinal's detention does not violate the INA when the Respondents detain him under § 1225, because he is seeking admission as § 1225 defines that phrase.  Sixth, Espinal's detention does not violate his procedural due process rights.

### I.      THE EXECUTIVE BRANCH'S HISTORY OF IMMIGRATION ENFORCEMENT IS MINIMALLY RELEVANT TO DETERMINING § 1225'S APPLICABILITY.

The Respondents first object to Magistrate Judge Fouratt discussion in the PFRD of the executive branch's historical enforcement of the immigration laws.  See Objections at 1.  The Court concludes that Magistrate Judge Fouratt commits no error providing that historical context.

As a general rule, agencies are free to "change[] their minds . . . as long as the proper procedures [a]re followed."  National Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 659 (2007).  At the same time, "established practice may shed light on the extent of power

conveyed by general statutory language[.]" West Virginia v. Environmental Protection Agency, 597 U.S. 697, 725 (2022). Historical practice is an interpretive tool particularly useful when courts confront ambiguous statutory text. See West Virginia v. Environmental Protection Agency, 597 U.S. at 723. Here, the Court cannot conclude that § 1225 is unambiguous. Multiple Courts of Appeals recently have reached conflicting conclusions regarding the statute's scope. See Buenrostro-Mendez v. Bondi, 166 F.4th 494, 498 (5th Cir. 2026)(holding that the United States may use § 1225 in the United States's interior); Avila v. Bondi, No. 25-3248, 2026 WL 819258, at *1 (8th Cir. 2026)( holding that the United States may use § 1225 in the United States's interior). See Barbosa da Cunha v. Freden, 175 F.4th 61, 96 (2nd Cir. 2026)(holding that the United States may only use § 1225 on the United States' border); Hernandez Alvarez v. Warden, Federal Detention Center Miami, 2026 WL 1243395, at 21 (11th Cir. 2026)( holding that the United States may only use § 1225 on the United States' border). The existence of this Court of Appeals split suggests that § 1225 is susceptible to more than one reasonable interpretation.

Because § 1225 is not clear, the executive branch's historical enforcement practices have at least some relevance to the interpretive inquiry. To be sure, "agencies have no special competence in resolving statutory ambiguities. Courts do." Loper Bright Enterprises v. Raimondo, 603 U.S. 369, 400-01 (2024). That principle does not render, however, historical practice irrelevant. Rather, historical practice may provide useful context when a court seeks to ascertain a statute's meaning. See Biden v. Texas, 597 U.S. 785, 787 (2022); Loper Bright Enterprises v. Raimondo, 603 U.S. at 386 ("[T]he longstanding practice of the government -- like any other interpretive aid -- can inform a court's determination of what the law is."). In this respect, historical practice resembles an unpublished judicial opinion: it is not binding, but it may carry persuasive value. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

The historical record here has some persuasive force.  From 1997 through 2025, successive presidential administrations and numerous immigration judges generally treat unadmitted aliens in the United States' interior as subject to § 1226(a) rather than subject to § 1225(b)(2).  See Buenrostro-Mendez v. Bondi, 166 F.4th at 500.  For more than twenty-five years, therefore, administrations of both political parties operated on the understanding that § 1226 governs detention in the United States' interior.  That history is not dispositive, but it is not meaningless.  It reflects that decades of executive-branch lawyers review the statutory scheme and consistently apply § 1226 in that context.  The significance of that history is nevertheless limited.  The Court has not identified any prior administration that expressly concludes § 1225 never applies in the United States' interior.  Rather, it appears that no previous administration advanced the interpretation presently before the Court, leaving the issue largely unexplored.  Accordingly, the historical record sheds some light on the question before the Court, but it does not resolve it.

Every case arises against a particular factual and legal backdrop.  The historical application of §§ 1225 and 1226 is part of that backdrop, and may inform the Court's analysis.  The Court therefore declines to hold that the executive branch's prior enforcement practices are irrelevant to determining § 1225's applicability.  Those practices possess some persuasive value, however modest.  The Court accordingly overrules the Respondents' Objections to the extent they argue that prior administrative practice is irrelevant to the § 1225 interpretation.

## II.    ESPINAL'S CRIMINAL HISTORY IS NOT RELEVANT TO DETERMINING § 1225'S APPLICABILITY.

The Respondents next object to Magistrate Judge Fouratt's mention in the PFRD that the Respondents detain Espinal under § 1225 despite that Espinal has no criminal history.  See Objections at 2.  The Court concludes that Magistrate Judge Fouratt does not commit error when he includes Espinal's criminal history for contextual purposes.  The Court agrees, however, with

the United States that an alien's criminal history has no bearing on whether § 1225 applies.

To be subject to § 1225's mandatory detention, three things must be present: the alien must be (i) an applicant for admission; (ii) seeking admission; and (iii) not clearly and beyond a doubt entitled to be admitted. See 8 U.S.C. § 1225. The Court previously holds that the United States may use § 1225 to detain aliens in the United States' interior who satisfy the seeking admission requirement:

> The Court instead believes that seeking admission is something active that an alien must engage; an alien must request admission into the United States. This seeking can occur at the border, by an arriving alien requesting admission at a lawful point of entry; this seeking can also occur in the interior of the United States, however, when an alien who has not been admitted, an applicant for admission, makes some attempt to gain lawful admission such as filing for an asylum or visa.

Singh v. Noem, 2026 WL 146005, at *35. Importantly, nothing in § 1225 conditions its applicability on an alien's criminal history. The Court therefore sustains the Respondents' Objection to the extent that it argues that Espinal's lack of a criminal history is irrelevant to the § 1225 inquiry, but overrules the Respondents' Objection to the extent that the Respondents argue that Magistrate Judge Fouratt cannot mention the criminal history to provide context for the detention.

## III.    THE COURT HAS JURISDICTION TO REVIEW ESPINAL'S HABEAS PETITION.

The Respondents object to the PFRD's conclusion that jurisdiction is proper, because they assert that §§ 1252(b)(9), 1252(e)(3), and 1252(g) bar the Court's review of Espinal's claims. See Objections at 2-3. The Court maintains subject-matter jurisdiction to decide Espinal's claims. First, § 1252(b)(9) does not apply, because Espinal does not challenge his order of removal. Second, § 1252(e)(3) applies only to challenges on the validity of § 1225(b)(2) and not to a habeas petition challenging an individual's detention. Finally, § 1252(g) does not bar review of Espinal's claims, because he is not challenging the Attorney General's decision or action to

commence proceedings against him, adjudicate his case, or execute an order of removal against him.

**A.     SECTION 1252(B)(9) DOES NOT CHANNEL ESPINAL'S PETITION TO THE TENTH CIRCUIT.**

In the PFRD, Magistrate Judge Fouratt concludes that § 1252(b)(9) does not strip the Court of jurisdiction to hear Espinal's petition, because Espinal is not subject to an order of removal. See PFRD at 17-18. The Respondents argue that § 1252(b)(9) limits judicial review to Courts of Appeals, because Espinal asserts a Constitutional violation -- a due process violation. See Objections at 3. The Court agrees with Magistrate Judge Fouratt that § 1252(b)(9) does not strip the Court of jurisdiction to hear Espinal's petition.

Because the Respondents object to Magistrate Judge Fouratt's conclusion that § 1252(b)(9) does not strip the Court of jurisdiction, the Court conducts a de novo review. See Alexander v. Kirkpatrick, 435 F. Supp.3d 1216, 1218 (D.N.M. Jan. 23, 2020)("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Section(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision . . . to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). The Tenth Circuit holds that § 1252(b)(9) does not apply in circumstances where a petitioner challenges his or her detention, and does not seek the "review of an order of removal." Ochieng v. Mukasey, 520 F.3d 1110, 1115 (10th Cir. 2008). Similarly, several district courts -- including this Court -- have recently held that § 1252(b)(9) applies only if the petitioner is challenging a removal order. See e.g., Molina Ochoa v. Noem, No. 25-0881, 2026 WL 1256556,

at *41 (D.N.M. May 7, 2026)(Browning J.,); Los Caballero v. Baltazar, No. 25-3120, 2025 WL 2977650, at *4 (D. Colo. October 22, 2025)(Wang, J.,); S.D.B.B. v. Johnson, No. 25-0882, 2025 WL 2845170, at *3 (M.D.N.C. October 7, 2025)(Schroeder, J.,).

Moreover, the Supreme Court in Jennings v. Rodriguez, 583 U.S. 281 (2019), recognizes the limited circumstances where § 1252(b)(9) bars a district court's jurisdiction. See 583 U.S. at 294-95. The Court in Jennings v. Rodriguez notes that the aliens in that case "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar." 583 U.S. at 294-95.

Here, Espinal does not challenge any removal order, because the Respondents have not entered an order of removal against him. Rather, he challenges the Constitutionality and legality of his detention during the period before his removal hearing. Accordingly, § 1252(b)(9) does not prohibit the Court from reviewing his claims. See Molina Ochoa v. Noem, 2026 WL 1256556, at *41. The Court therefore overrules the Respondents' Objections insofar as they argue that § 1252(b)(9) bars the Court's jurisdiction.

> **B.      SECTION 1252(E)(3) DOES NOT BAR REVIEW OF ESPINAL'S PETITION.**

In the PFRD, Magistrate Judge Fouratt concludes that § 1252(e)(3) does not strip the Court of jurisdiction, because Espinal does not bring a Constitutional challenge to § 1252(b). See PFRD at 15. The Respondents argue that Magistrate Judge Fouratt is wrong, because he omits discussion of the word "implementation" in the prefatory sentence of that statutory section, so his analysis is incomplete. See Objections at 2. The Court agrees with Magistrate Judge Fouratt that § 1252(e)(3) does not strip the Court of jurisdiction to hear Espinal's petition.

Because the Respondents object to Magistrate Judge Fouratt's conclusion that § 1252(e)(3) does not strip the Court of jurisdiction, the Court conducts a de novo review.  See Alexander v. Kirkpatrick, 435 F. Supp.3d at 1218 ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  Section 1252(e)(3) does not bar review of Espinal's petition, because he does not bring a Constitutional challenge to § 1252(b) or to its implementation.  See Vaupel v. Ortiz, 244 F. App'x 892, 895 (10th Cir. 2007)(stating that § 1252(e)(3) "sets forth the process for bringing a constitutional challenge to § 1225(b) or its implementing regulations").  Section 1252(e)(3) channels to the District Court for the District of Columbia certain systemic challenges to § 1225(b) "and its implementation," including claims that § 1225(b) or an implementing regulation is unconstitutional, or that a written policy directive implementing § 1225(b) violates the law.  Make the Rd. New York v. Noem, No. 25-5320, 2025 WL 3563313, at *16 (D.C. Cir. November 22, 2025).

Here, Espinal seeks individual habeas relief from ongoing detention.  This individualized relief is not seeking to redress a written policy or § 1225(b)'s Constitutionality.  Espinal's relief instead turns on whether § 1225 or § 1226 governs his custody, and whether his continued detention is lawful.  That request is not one for the programmatic, nationwide review that § 1252(e)(3) channels to the District Court for the District of Columbia.  The Courts' decision here is in line with Molina Ochoa v. Noem, 2026 WL 1256556, where the Court holds that § 1252(e)(3) does not strip the Court of jurisdiction to hear § 1225 detention challenges.  See 2026 WL 1256556, at *42.  The Court therefore overrules the Respondents' Objections insofar as they argue that § 1252(e)(3) bars the Court's jurisdiction.

**C.   SECTION 1252(G) DOES NOT DIVEST THE COURT OF JURISDICTION OVER ESPINAL'S INDIVIDUAL PETITION.**

In the PFRD, Magistrate Judge Fouratt concludes that § 1252(g) does not strip the Court of jurisdiction, because the United States detaining Espinal under § 1225 is a separate action from the commencement of removal proceedings.  See PFRD at 15.  The Respondents object, arguing that § 1252(g) bars the Court's jurisdiction, because detention is a necessary part of removal, so commencing, adjudicating, and removing an alien necessarily requires detention.  See Objections at 2-3.  The Court agrees with Magistrate Judge Fouratt that § 1252(g) does not strip the Court of jurisdiction to hear Espinal's petition.

Because the Respondents object to Magistrate Judge Fouratt's conclusion that § 1252(g) does not strip the Court of jurisdiction, the Court conducts a de novo review.  See Alexander v. Kirkpatrick, 435 F. Supp.3d at 1218 ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  Section 1252(g) does not deprive the Court of jurisdiction over Espinal's habeas petition.  Congress narrowly confines § 1252(g) to "three discrete actions that the Attorney General may take," namely, the decisions to commence proceedings, adjudicate cases, or execute removal orders.  Reno v. Am.-Arab Anti Discrimination Comm., 525 U.S. 471, 482 (1999).  The provision therefore does not sweep in all claims that bear some relationship to commending proceedings; rather, § 1252(g) targets only those claims that arise directly from exercise of prosecutorial discretion in undertaking those specific actions.  See Molina Ochoa v. Noem, 2026 WL 1256556, at *42.

As the Tenth Circuit explains, Congress enacts § 1252(g) to address "'a particular evil: attempts to impose judicial constraints upon prosecutorial discretion.'"  Aguilar-Alvarez v. Holder, 528 F. App'x 862, 870 (10th Cir. 2013)(quoting Reno, 525 U.S. at 485 n.9).  Consistent with that purpose, the Tenth Circuit asks whether a claim is "connected directly and immediately" to one of the enumerated actions; claims that have only a "weak, remote, or tenuous connection" fall outside

the statute's reach.  Namgyal Tsering v. U.S. Immigr. & Customs Enf't, 403 F. App'x 339, at *3 (10th Cir. 2010)(citing Humphries, 164 F.3d 936, 943 (5th Cir. 1999)).  Measured against that standard, Espinal's claim does not "arise from" the Attorney General's decision to commence proceedings against him.  Espinal does not challenge the United States' discretionary decision to commence removal proceedings, nor does he seek to constrain how the Respondents initiate or pursue those proceedings.  Instead, Espinal posits a question of statutory interpretation that operates independently of the decision to initiate removal, challenging the lawfulness of his detention under § 1225.  Although detention may occur in the broader context of commencing removal proceedings, that contextual overlap is insufficient to bring the claim within § 1252(g)'s narrow scope.

To be sure, a claim that directly contests the Respondents' ability to initiate removal proceedings could fall within § 1252(g), because that claim would have an immediate connection to the decision to commence removal proceedings.  Espinal advances no such challenge.  The claim that Espinal pleads in the Petition is tangentially related to that decision and therefore lies outside the prosecutorial discretion claims which Congress seeks to channel through § 1252(g).  Accordingly, § 1252(g) does not strip the Court of jurisdiction to adjudicate Espinal's habeas petition.  See Molina Ochoa v. Noem, 2026 WL 1256556, at *43.  The Court therefore overrules the Respondents' Objections insofar as they argue that § 1252(g) bars the Court's jurisdiction.

## IV.    **THE COURT RELAXES THE INA'S EXHAUSTION REQUIREMENT.**

In the PFRD, Magistrate Judge Fouratt concludes that the Court should not deny Espinal's Petition for failure to exhaust administrative remedies, because exhaustion would be futile.  See PFRD at 18-19.  The Respondents object, arguing that this recommendation rests on the assumption that the Court can predict how the immigration judges will rule on custody redetermination hearings.  See Objections at 3.  The Court agrees with Magistrate Judge Fouratt

that the Court should not deny Espinal's Petition for failure to exhaust administrative remedies.

Because the Respondents object to Magistrate Judge Fouratt's conclusion that the Court should not deny Espinal's Petition for failure to exhaust administrative remedies, the Court conducts a de novo review.  See Alexander v. Kirkpatrick, 435 F. Supp.3d at 1218 ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  In these circumstances, the Court concludes that the prudential exhaustion requirement does not bar Espinal's Petition.

"'Generally, a habeas petition cannot be used to substitute for direct appeal.'"  Soberanes v. Comfort, 388 F.3d 1305, 1309 (10th Cir. 2004)(quoting Latu v. Ashcroft, 375 F.3d 1012, 1012 (10th Cir. 2004)).  "Courts have carved out an exception to the exhaustion requirement for constitutional challenges to the immigration laws, because the BIA has no jurisdiction to review such claims."  Soberanes v. Comfort, 388 F.3d at 1310.  "[W]here Congress has not clearly required exhaustion, sound judicial discretion governs."  McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  In the absence of a statutory exhaustion mandate, courts retain discretion to require or excuse exhaustion based on competing institutional and individual interests.  See McCarthy v. Madigan, 503 U.S. at 144.  The Tenth Circuit does not provide a framework for evaluating the exhaustion requirement's competing interests; however, the Untied States Court of Appeals for the Second Circuit states:

> [I]f an exhaustion requirement is judicially imposed instead of statutorily imposed, a number of exceptions apply that allow courts to excuse a party's failure to exhaust administrative remedies. Specifically, exhaustion of administrative remedies may not be required when (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.

Beharry v. Ashcroft, 329 F.3d 51, 62 (2d Cir. 2003).  In the Court's view, these factors reflect the pragmatic approach that the Supreme Court discusses in McCarthy v. Madigan.  See Molina Ochoa

- 20 -

v. Noem, 2026 WL 1256556, at *45.

Here, several of the Beharry v. Ashcroft factors support the Court waiving the exhaustion requirement for Espinal. First, the BIA has no jurisdiction to review Constitutional challenges to § 1225 detention without a final order of removal, giving Espinal no genuine opportunity for adequate relief. See Soberanes v. Comfort, 388 F.3d at 1310. Second, the Court determines an administrative appeal is futile, because the BIA's decision in Matter of Yajure Hurtado categorically denies relief to noncitizens like Espinal. Third, DHS' policy of using § 1225 past the border began in January 2025, making Espinal's appeal less viable. See Make the Rd. II, 2025 WL 3563313 ("On January 21, 2025, the Acting Secretary of Homeland Security extended Expedited Removal nationwide to encompass all persons encountered anywhere in the United States . . . ."). Fourth, Espinal's Petition raises substantial Constitutional questions, because the Respondents' position subjects a substantial number of people to detention without bond. See Buenrostro-Mendez v. Bondi, 166 F.4th at 515 (Douglas, J., dissenting)(stating that the respondents' view "would have required the detention of millions of people"). For these reasons, the Court concludes that Espinal does not need to exhaust his administrative remedies. The Court therefore overrules the Respondents' Objections insofar as they argue that Espinal must exhaust his administrative remedies.

## V. ESPINAL'S DETENTION DOES NOT VIOLATE THE INA WHEN THE RESPONDENTS DETAIN HIM UNDER § 1225.

In the PFRD, Magistrate Judge Fouratt concludes that the Respondents violate the INA by detaining Espinal under § 1225, because Espinal is not seeking admission within the meaning of the statute. See PFRD at 28-30. The Respondents object arguing that Magistrate Judge Fouratt's "ill-defined geographical line drawing" conflicts both with § 1225's text, and the Courts of Appeals reasoning in Buenrostro-Mendez v. Bondi and Avila v. Bondi. See Objections at 4. The

Court agrees that Magistrate Judge Fouratt's analysis is not consistent with the statutory text.

Because the Respondents object to Magistrate Judge Fouratt's conclusion that the Respondents violate the INA by detaining Espinal under § 1225, the Court conducts a de novo review. See Alexander v. Kirkpatrick, 435 F. Supp.3d at 1218 ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The Court recognizes that Magistrate Judge Fouratt's opinion has force and finds support in the Eleventh Circuit's reasoning in Hernandez Alvarez v. Warden, Federal Detention Center Miami. But adopting that interpretation would require the Court to reject the Fifth and Eighth Circuits' analyses in Buenrostro-Mendez v. Bondi and Avila v. Bondi.[4] The Court therefore reviews the issue carefully, because adopting Magistrate Judge Fouratt's opinion would place it at odds with two Courts of Appeals and the Court's opinion in Singh v. Noem. Upon that review, the Court concludes that Magistrate Judge Fouratt's

_____

[4] Both Buenrostro-Mendez v. Bondi and Avila v. Bondi conclude that the United States may apply § 1225 within the United States' interior because they interpret the phrase "seeking admission" using § 1225's statutory definition of "applicant for admission." Buenrostro-Mendez v. Bondi, 166 F.4th at 508; Avila v. Bondi, 170 F.4th at 1138. Under that approach, an individual may be "seeking admission" even after entering the country, and § 1225 does not apply only to encounters occurring at the border.

Magistrate Judge Fouratt reaches the opposite conclusion by employing a different interpretive framework. Rather than defining "seeking admission" through § 1225's definition of "applicant for admission," Magistrate Judge Fouratt relies on § 1101(a)(13)(A)'s definition of "admission." PFRD at 29-30. Using that definition, he reasons that "seeking admission" refers only to the process of obtaining lawful entry into the United States, and, therefore, that § 1225 applies only at or near the border. PFRD at 29-30

Although neither the Fifth Circuit nor the Eighth Circuit expressly addressed Magistrate Judge Fouratt's interpretation, their reasoning is incompatible with it. Both courts ground their analyses in the relationship between "seeking admission" and "applicant for admission," while Magistrate Judge Fouratt grounds his analysis in the separate statutory definition of "admission." Because these competing approaches assign different meanings to the same phrase and produce opposite results regarding § 1225's geographic reach, Magistrate Judge Fouratt's interpretation would require the Court to depart from the reasoning underlying both Buenrostro-Mendez v. Bondi and Avila v. Bondi, and its own work in Singh v. Noem. The Court therefore concludes that the Fifth and Eighth Circuits' analyses, and the Court's interpretation of § 1225 in Singh v. Noem, point to a different interpretation of § 1225 than the one Magistrate Judge Fouratt adopts.

interpretation imports a definition into § 1225 that creates a conflict within the statute.  The Court instead adheres to its analysis in Singh v. Noem.

According to Magistrate Judge Fouratt, "the overall structure of §§ 1225 and 1226 demonstrates that detention under § 1225 is done as part of the inspection process upon arrival at the border before an alien makes entry into the United States, and that after entry, § 1226 -- with its warrant and bond hearing protections -- applies to the apprehension and detention of inadmissible aliens within the interior of the country."  PFRD at 28.  Based on that understanding, Magistrate Judge Fouratt concludes that § 1225 applies only at the border and that an alien cannot be "seeking admission" once he is already present in the United States.  PFRD at 28-30.

The problem with that analysis is that it begins with the INA's definition of "admission" under § 1101(a)(13)(A) and does not grapple with § 1225's definition of "applicant for admission." PFRD at 28-30.  Under § 1101(a)(13)(A), "admission" means the "'lawful entry of the alien into the United States after inspection and authorization by an immigration officer.'"  PFRD at 23 (citing 8 U.S.C. § 1101(a)(13)(A)).  That definition contemplates a border crossing at some point. Bracamontes v. Holder, 675 F.3d 380, 385 (4th Cir. 2012).  Section 1225, however, defines a different term.  Section § 1225 defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).

That distinction between § 1101(a)(13)(A)'s definition of "admission" and § 1225's definition of "applicant for admission" is dispositive for the Court.  Section 1225 expressly defines applicants for admission to include two categories of aliens: (i) aliens arriving in the United States; and (ii) aliens already present in the United States who have not been admitted.  See 8 U.S.C. § 1225(a)(1).  Section 1225(b)(2)(A) then provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is

not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).

Section 1225(b)(2)(A) therefore establishes three requirements: the alien must (i) be an applicant for admission; (ii) be seeking admission; and (iii) not be clearly entitled to admission. The first requirement is important, because Congress expressly defines applicants for admission to include aliens already present in the United States.  Magistrate Judge Fouratt's interpretation does not account for that text.  Under his reading, "seeking admission" means seeking lawful entry at the border after inspection and authorization by an immigration officer.  PFRD at 30.  But if Magistrate Judge Fouratt's interpretation is correct, the category of applicants for admission who are "present in the United States" becomes inexplicable.  8 U.S.C. § 1225(a)(1).  An alien already present in the United States simultaneously cannot be seeking lawful entry at the border.

An example illustrates the problem.  Consider an alien who enters unlawfully, lives in the United States for years, and later files an affirmative asylum application.  Section 1225(a)(1) classifies him as an applicant for admission, because he is present in the United States and has not been admitted.  Under Magistrate Judge Fouratt's interpretation, however, that same individual could never be "seeking admission," because he is not physically attempting entry at the border. The result is that Congress defines him as an applicant for admission while simultaneously rendering him incapable of satisfying the condition that governs detention under § 1225(b)(2)(A).

Congress has not enacted that result.  If Congress intends § 1225(b)(2)(A) to apply only to aliens physically arriving at the border, it could have said so directly.  Instead, it chose a defined term that expressly includes aliens already present in the United States and then conditioned detention on whether that defined class is "seeking admission."  8 U.S.C. § 1225(b)(2)(A).  The Court must, if possible, give effect to every word Congress enacts.  See Duncan v. Walker, 533 U.S. 167, 174 (2001)("It is our duty to give effect, if possible, to every clause and word of a

statute."). Yet Magistrate Judge Fouratt's interpretation does the opposite. It imports a definition from § 1101(a)(13)(A) that nullifies language in § 1225(a)(1). Nothing in § 1225 suggests Congress intends that result.

Nor do the authorities cited in the PFRD resolve this problem. Magistrate Judge Fouratt relies on Sanchez v. Mayorkas, 593 U.S. 409, 415 (2021), and Medina-Rosales v. Holder, 778 F.3d 1140, 1144-45 (10th Cir 2015), for the proposition that an alien granted asylum has not been "admitted" under § 1101(a)(13). PFRD at 28-30. Those cases explain the meaning of admission under § 1101(a)(13). They do not address the separate question that Espinal's case presents here: how the phrase "seeking admission" operates within a statutory scheme that treats certain aliens already present in the United Sates as applicants for admission.[5]

Once the Court confronts that question in this case, the flaw in Magistrate Judge Fouratt's analysis is apparent.[6] Section 1101(a)(13)(A)'s definition of admission contemplates "a physical

---

[5] On a clean slate, the Court would stick with its definition of "seeking admission" in Singh v. Noem. Seeking asylum requires "inspection and authorization by an immigration officer." 8 U.S.C. 1101(a)(13)(A). The Court maintains that its interpretation of § 1101(a)(13)(A) harmonizes all the words in § 1225 more than the Supreme Court's interpretation of § 1101(a)(13)(A) in Sanchez v. Mayorkas. Nevertheless, as a district court, the Court must full follow the Supreme Court's interpretation. The Court predicts here, that, when the Supreme Court addresses the Circuit split, it will side more with the Fifth and Eighth Circuit's interpretation rather than the Eleventh's, which may require it to loosen its understanding of § 1101(a)(13)(A) as Sanchez v. Mayorkas interprets it and align more with the Court's interpretation in Singh v. Noem.

[6] Magistrate Judge Fouratt's position also does not take into account the distinction between § 1225(b)(1) and § 1225(b)(2), and renders § 1225(b)(2) almost entirely superfluous. Section 1225(b)(1) applies to: (i) all aliens arriving in the United States; and (ii) aliens who have not been admitted or paroled into the United States and who have not been continuously present in the United States for more than two years who are deemed inadmissible under either § 1182(a)(6)(C) (fraudulent papers) or § 1182(a)(7) (lack of valid papers). 8 U.S.C. § 1225(b)(1). Section 1225(b)(1) is the default provision for § 1225. Section 1225(b)(1) certainly applies to almost every alien who arrives at ports of entry at the border to seek lawful entry, with a few minor exceptions (e.g., an alien deemed inadmissible, not for lack of lawful papers, but for health-related grounds under § 1182(a)(1)). The INA definition of admission under 8 U.S.C. § 1101(a)(13)(A) -- "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer" -- applies to the alien's entry only after lawful inspection

- 25 -

crossing of the border following the sanction and approval of the United States authorities."

Bracamontes v. Holder, 675 F.3d at 385.  An alien cannot be present simultaneously in the United

States and physically crossing the border into it.  Yet that situation is what Magistrate Judge

Fouratt's interpretation requires for a substantial category of applicants for admission whom §

1225(a)(1) identifies.

The Court struggles to reconcile § 1101(a)(13)'s definition of admission with § 1225's

broader definition of applicant for admission; the Court therefore gives "seeking admission" its

ordinary meaning.  See Department of Agriculture Rural Development Rural Housing Service v.

Kirtz, 601 U.S. 42, 60 (2024)("[T]his Court has said it will deviate from a statutory definition only

when applying the definition would incompatible with Congress' regulatory scheme or would

destroy one of the statute's major purposes.").  Dictionaries define admission as "an act of

admitting: the fact or state of being admitted: such as the right or permission to join or enter a

place, a group, etc."  "Admission," Merriam-Webster.com, https://www.merriam-

webster.com/dictionary/admission (last visited June 9, 2026).  Under the ordinary meaning, an

alien seeks admission when the alien affirmatively seeks lawful permission to remain in or enter

---

at a port of entry.  See Medina-Rosales v. Holder, 778 F.3d 1140, 1145 (10th Cir. 2015)(explaining that the INA's definition of admission is "'limited and does not encompass a post-entry adjustment of status,' because it 'refers expressly to entry into the United States, denoting by its plain terms passage into the country from abroad at a port of entry.'")(quoting Negrete-Ramirez v. Holder, 741 F.3d 1047, 1051 (9th Cir. 2014)).  Applying that interpretation of "admission" to § 1225(b)(2) would produce an implausibly narrow result: an applicant for admission could seek admission only at a port of entry, even though § 1225(b)(1) already governs most aliens arriving at ports of entry. Consider an alien apprehended while attempting to cross the border between ports of entry.  Under Magistrate Judge Fouratt's interpretation, that alien would not be seeking admission because the alien is not attempting a lawful entry.  As a result, immigration officers could not detain the alien under § 1225(b)(2) -- a result that is difficult to reconcile with the statute's text and structure. Reading § 1225(b)(2) as Magistrate Judge Fouratt suggests, therefore, limits § 1225(b)(2)'s scope so much so as to render the provision practically superfluous.  While the Court agrees that § 1225(b)(2) is the catch-all provision which covers the aliens that § 1225(b)(1) does not cover, the Court does not agree that Congress would write § 1225(b)(2) so that it covers practically nothing.

the United States.

> That reading is consistent with the Court's analysis in <u>Singh v. Noem</u>:

> The Court instead believes that seeking admission is something active that an alien must engage; an alien must request admission into the United States.  This seeking can occur at the border, by an arriving alien to request admission at a lawful point of entry; this seeking can also occur in the interior of the United States, however, when an alien who has not been admitted, an applicant for admission, makes some attempt to gain lawful admission such as filing for an asylum or visa.

<u>Singh v. Noem</u>, 2026 WL 146005, at *35.  The Court therefore applies the test this Court articulates in <u>Singh v. Noem</u>.

For § 1225 purposes, Espinal is an alien present in the United States for over two years and that the United States apprehends him in the interior of the United States.  <u>See</u> PFRD at 2; <u>See</u> 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission.").  Under this fact pattern, the United States may detain Espinal under § 1225 if he is seeking admission.  <u>See</u> 8 U.S.C. § 1225(B)(2)(A) ("[I]f the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.").  Like the alien in <u>Singh v. Noem</u>, who is seeking admission, because he applies for asylum, Espinal applies for asylum on December 22, 2022.  <u>See</u> PFRD at 5; <u>Singh v. Noem</u>, 2026 WL 146005, at *35 (holding that an alien seeks admission for purposes of § 1225 by applying for asylum).  Espinal therefore is seeking admission, and § 1225's mandatory detention is applicable.  His detention therefore does not violate the INA. The Court sustains this portion of the Respondents' Objections and concludes that Espinal is subject to § 1225's mandatory detention.

## VI.    ESPINAL'S DETENTION DOES NOT VIOLATE HIS PROCEDURAL DUE <u>PROCESS RIGHTS.</u>

In the PFRD, Magistrate Judge Fouratt concludes that Espinal's detention under § 1225

violates his due process rights, because the Respondents should detain Espinal under § 1226, thus providing him with a bond hearing. See PFRD at 5. In the Objections, the Respondents argue that they do not violate Espinal's due process rights, because § 1226 does not give Espinal the right to a bond hearing. See Objections at 4. The Court agrees with the Respondents that Espinal's detention under § 1225 does not violate Espinal's due process rights.

Because the Respondents object to Magistrate Judge Fouratt's conclusion that Espinal's § 1225 detention violates his due process rights, the Court conducts a de novo review. See Alexander v. Kirkpatrick, 435 F. Supp.3d at 1218 (Browning, J.)("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). As the Court explains in Singh v. Noem, the only procedural rights that an alien -- subject to the entry fiction -- has is what § 1225 affords and therefore continued detention without a bond hearing does not violate an alien's procedural due process rights. See Singh v. Noem, 2026 WL 146005, at *39. The Court therefore sustains the Respondents' Objections insofar as they argue that they do not violate Espinal's procedural due process rights.

Based on the Tenth Circuit's conclusion in Rodriguez-Fernandez, 654 F.2d 1382, 1387 (10th Cir. 1981), however, the Court concludes that Espinal has substantive due process protections that extend beyond § 1225's protections. The United States may violate an alien subject to the entry fiction's substantive due process rights if immigration detention becomes punitive. See Rodriguez-Fernandez, 654 F.2d at 1387 ("[A]n excluded alien in physical custody within the United States may not be 'punished' without being accorded the substantive . . . due process guarantees of the Fifth Amendment."). Nevertheless, "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." United States v. Salerno, 481 U.S. 739, 746 (1987). A restriction on liberty is punitive rather than regulatory if (i) the government intends to impose punishment; or (ii) the restriction is not

rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to that purpose.  See United States v. Salerno, 481 U.S. at 747; Kingsley v Henderson, 576 U.S. 389, 398 (2015).

The Court determines that Espinal cannot demonstrate, at this time, that his detention is so long that it has crossed over into punishment and a violation of his due process rights.  First, Espinal provides no evidence that his detention is the result of the United States' intent to punish.  Further, the Court determines that "facilitating deportation" is a rational, nonpunitive purpose for detention.  Demore v. Kim, 538 U.S. 510, 532-33 (2003)(Kennedy, J., concurring).  Finally, the Court determines that Espinal's detention to date -- detained on November 21, 2025 -- is not so long as to qualify as "excessive in relation" to the purpose of facilitating deportation.  PFRD at 2.  When there is "an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation . . . but to incarcerate for other reasons."  Demore v. Kim, 538 U.S. at 532-33 (Kennedy, J., concurring).  The Court does not draw a bright-line rule of what constitutes an "unreasonably delay," but concludes that the approximate seven-month detention up to this point does not constitute a violate of Espinal's substantive due process rights, especially given the volume of deportations that the United States is processing right now.

Moreover, Espinal's detention is similar to the alien's detention in Singh v. Noem.  In Singh v. Noem, the United States re-detains the alien -- also an asylum seeker -- at an interior United States Border Patrol checkpoint absent any material change in circumstances that renders him a danger to the community or a flight risk.  See 2026 WL 146005, at *3.  The Court concludes that the United States does not violate the alien's substantive due process rights, because roughly four months of detention does not constitute a violation of the alien's substantive due process rights.  See 2026 WL 146005, at *39.  Similarly, the Respondents re-detain Espinal after he reports

for an ICE check-in.  See PFRD at 5.  Like the circumstances in Singh v. Noem, the Respondents'

re-detention of Espinal is absent any material change in circumstances that render him a danger to

the community or a flight risk.  See PFRD at 5.  As the Court concludes that the four-month

detention period in Singh v. Noem serves the purpose of facilitating deportation, so too does

Espinal's roughly seven-month detention period facilitate deportation.  See Singh v. Noem 2026

WL 146005, at *39; Demore v. Kim, 538 U.S. at 530 (holding that six months in INS custody does

not violate the alien's due process rights); Xing v. Noem, No. 26-0306, 2026 WL 1493783, at *9

(D.N.M. May 28, 2026)(Browning, J)(holding that six months and nine days in INS custody does

not violate the alien's due process rights); Otis V. v. Green, No. 18-CV-742, 2018 WL 3302997,

at *8 (D.N.J. July 5, 2018)(Linares, J.)(holding that detention for over a year is insufficient to

render continued detention so suspect as to require a bond hearing).  The Court struggles to

conclude that Espinal's detention does not facilitate deportation after concluding that similar

detention periods in Singh v. Noem and Xing v. Noem facilitate deportation.  Accordingly, the

Court sustains this portion of the Respondents' Objections and concludes that Espinal's detention

does not violate his due process rights.

**IT IS ORDERED** that: (i) the Respondents' Objections to the Proposed Findings and

Recommended Disposition, filed April 10, 2026 (Doc. 16), are sustained in part and overruled in

part; (ii) the Court overrules the Respondents' objection to the discussion in the Magistrate Judge's

Proposed Findings and Recommended Disposition on Petition for a Writ of Habeas (Dkt. No. 1)

and Respondents' Motion to Dismiss Petition (Dkt. No. 8), filed March 27, 2026 ("PFRD"), of the

Executive Branch's history of immigration enforcement; (iii) the Court sustains the Respondents'

objection to the PFRD regarding whether the Petitioner's criminal history is relevant to

determining § 1225's applicability, but overrules the objection regarding whether the Petitioner's

criminal history may be discussed for contextual purposes; (iv) the Court overrules the

Respondents' objection to the PFRD's recommendation that the Court has jurisdiction to review the Petitioner's habeas petition; (v) the Court overrules the Respondents' objection to the PFRD's recommendation that the Court should relax the exhaustion requirement in the Immigration and Nationality Act; (vi) the Court sustains the Respondents' objection to the PFRD's recommendation that the Respondents' detention of the Plaintiff under 8 U.S.C. § 1225 violates the INA; (vii) the Court sustains the Respondents' objection to the PFRD's recommendation that the Respondents detention of the Plaintiff under § 1225 violates his procedural due process rights; (viii) the PFRD is adopted in part and not adopted in part; (ix) the Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus, filed February 9, 2026 (Doc. 8)("MTD"), is granted in part and denied in part; (x) the Court adopts the PFRD's recommendation to accept jurisdiction over this matter; (xi) the Court does not adopt the PFRD's recommendation to declare the Petitioner's detention a violation of his procedural due process rights; (xii) the Court does not adopt the PFRD's recommendation that the Petitioner be granted a bond hearing; (xiii) the Court adopts the PFRD's recommendation that the Court should deny Espinal's request for immediate release; (xiv) the Court does not adopt the PFRD's recommendation to deny the MTD; (xv) the Court denies the MTD insofar as it argues that the court lacks jurisdiction over the Petitioner's claims; (xvi) the Court denies the MTD insofar as it argues that the Petitioner must exhaust his administrative remedies; (xvii) the Court grants the MTD insofar as it argues that the Respondents properly detain the Petitioner under § 1225; (xviii) the Petition for Writ of Habeas Corpus, filed January 19, 2026 (Doc. 1), is denied without prejudice; and (xix) a separate Final Judgment will be entered.

_____
UNITED STATES DISTRICT JUDGE

- 31 -

*Counsel and parties:*

Jacqueline Guinan
The Castaneda Law Group, LLC
Daphne, Alabama

--and--

Victoria Lucero
The Law Office of Victoria Lucero, LLC
Albuquerque, NM

     *Attorneys for the Petitioner*

Todd Blanche
  Deputy Attorney General
Ryan Ellison
  First Assistant United States Attorney
Peter Haynes
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for Respondents Kristi Noem, Pamela Bondi, and Mary De Anda-Ybarra*

George Dedos
Warden, Torrance County Detention Facility

     *Defendant pro se*